(October 17, 1913.)

## STATE, Respondent, v. GEORGE WINTER, Appellant.

### [135 Pac. 739.]

POWER OF COURT TO CORRECT RECORD—CRIMINAL LAW—RESISTANCE OF OFFICER—INTENT IN RESISTING OFFICER.

1. Where a court of record discovers that the minute entry of an order of court is false and does not correctly state the order, the court has the power and jurisdiction to correct the same so as to make the record speak the truth.

2. In a prosecution under sec. 6515 of the Rev. Codes, for resisting an officer in the discharge of his duty, it is not necessary that the resistance should have been made with any particular intent of violating the law or injuring the officer or anyone else, but it is essential that the person making the resistance should have had knowledge that the person resisted was an officer and that he was engaged in the discharge of, or the attempt to discharge, an official duty.

3. In a prosecution for unlawfully resisting or obstructing an officer in the discharge of his official duty, it is no defense for the defendant to show that threats had been made against him by other parties or that at the time he was in fear of bodily injury being inflicted upon him or his property being injured or destroyed.

4. Evidence examined in this case and *held* sufficient to support the verdict.

5. Facts and circumstances of this case examined and *held* that the judgment is excessive, and it is modified accordingly.

APPEAL from the District Court of the Fifth Judicial District for Bear Lake County. Hon. Ed. L. Bryan, Judge of the Seventh District, presiding.

Prosecution for wilfully resisting an officer engaged in the discharge of his duty. Verdict and judgment of conviction. Appealed. Verdict of conviction affirmed, and judgment of fine and imprisonment modified.

N. M. Ruick and J. H. Hawley, for Appellant.

The record cannot be amended at a subsequent term where there is no record or memoranda of the former order. Affidavits will not do. (*Wright v. Commonwealth,* 111 Va. 873, 69 S. E. 956; *Kilmer v. Parrish,* 144 Ill. App. 270; *McKay v. People,* 145 Ill. App. 277; 11 Cyc. 765.)

Parol evidence is not proper basis for amendment or correction. (*Coughran v. Gutcheus,* 18 Ill. 390; *Crowell v. Deen,* 21 Ill. App. 363.)

The court rejected all testimony offered in behalf of the defendant tending to show that he was laboring under a mistake of fact, and also refused to give instructions requested by the defendant in support of this theory, viz., requested instructions numbered 9, 10, 11 and 13, which constitutes error. (McClain, Criminal Law, sec. 133; Rev. Codes Idaho, sec. 6330, subd. 4; 12 Cyc. 156; *Price v. State,* 18 Tex. App. 474, 51 Am. Rep. 322; 5 Am. Crim. Rep. 385; 27 Cyc. 807, 809; *Levett's Case,* 1 Hale P. C. 474; *Yates v. People,* 32 N. Y. 509, cited in McClain, Crim. Law, *supra; Isham v. State,* 38 Ala. 213; *Crabtree v. Dawson,* 26 Ky. Law Rep. 1046, 83 S. W. 557, 67 L. R. A. 565.)

Such a defense is available under the charge of resisting an officer. (Wharton, Crim. Law, sec. 649.)

It was the right of the defendant to present to the jury a picture of his mind at the time of the offense by showing the

facts as they appeared to him at that time; the reasonableness of the appearance was a question for the jury, and the court erred in excluding from the jury testimony calculated to show that defendant was actually laboring under a mistake of fact. (*Robinson v. State,* 53 Md. 151, 36 Am. Rep. 399; *State v. Meche,* 42 La. Ann. 273, 7 So. 573.)

A witness may testify in his own behalf as to what his intention was. (*Cummings v. State,* 50 Neb. 274, 69 N. W. 756; *Fenwick v. State,* 63 Md. 239; Elliott, Evidence, sec. 2717.)

The lower court, as appears from his instructions to the jury and his exclusion of evidence offered by the defendant, took the view that the defendant's intent was immaterial. In this he was in error, since intent is the very gist of the crime of resisting an officer. (Bishop, Crim. Law, sec. 287.)

Criminal intent is immaterial only in those cases where an act in itself not criminal is prohibited by statute on grounds of public policy, and the statute does not make the criminality of the act depend upon its being wilfully, or maliciously, or knowingly done. (McClain, Crim. Law, sec. 128; *State v. Keller,* 8 Ida. 699, 70 Pac. 1051; *State v. Henzell,* 17 Ida. 725, 734, 107 Pac. 67, 27 L. R. A., N. S., 159; 9 Ency. of Ev. 142.)

It is competent for the accused to give in evidence any facts tending fairly to show his intent. (*Farrell v. State,* 32 Ohio St. 456, 30 Am. Rep. 614; *State v. King,* 86 N. C. 603; Wharton's Crim. Ev., sec. 428-A, and cases there cited.)

The court's charge, as given, threw upon the defendant the burden of negativing such knowledge, when the burden is on the state to prove knowledge of the facts which make the offense a crime, to the satisfaction of the jury beyond a reasonable doubt. (McClain, Crim. Law, sec. 924; *Jones v. State,* 114 Ga. 73, 39 S. E. 861; Wharton's Crim. Law, sec. 649; *People v. Nash,* 1 Ida. 206.)

"The evidence must show knowledge of some legal proceeding or process that had been interfered with; the intent will not be inferred merely from the act." (9 Ency. of Ev. 139, and cases cited; *State v. Murphy* (Del.), 66 Atl. 335; 2 Am. Dig. 1947.)

That which would make such resistance criminal is the evil intent or legal malice, including not only the purpose to do the act, but to do wrong. (*Mills v. Glennon*, 2 Ida. 105, 6 Pac. 116; *Spurr v. United States*, 174 U. S. 728, 19 Sup. Ct. 812, 43 L. ed. 1150; *Roberts v. United States*, 126 Fed. 897, 61 C. C. A. 427; *Potter v. United States*, 155 U. S. 438, 15 Sup. Ct. 144, 39 L. ed. 214; *United States v. Smith*, 27 Fed. 859; *Felton v. United States*, 96 U. S. 699, 24 L. ed. 875.)

"'Wilful' when used in a statute creating a criminal offense implies the doing of the act purposely and deliberately in violation of law." (Lewis, Sutherland's Stat. Cons. 776; 40 Cyc. 944; *Brown v. State*, 137 Wis. 543, 119 N. W. 338; *State v. Clifton*, 152 N. C. 800, 67 S. E. 751; *State v. Perry*, 109 Iowa, 353, 80 N. W. 401.)

J. H. Peterson, Attorney General, J. J. Guheen and T. C. Coffin, Assistants, for Respondent. D. C. McDougall, Ex-Attorney General, and O. M. Van Duyn, Ex-Assistant, on brief.

Courts always have jurisdiction over their records to make them conform to what was actually done at the time. (*Aetna Fire Ins. Co. v. Boon*, 95 U. S. 117, 24 L. ed. 395; 17 Ency. Pl. & Pr. 909; *Doane v. Glenn*, 1 Colo. 456.)

"The power to amend or correct the record may be exercised in criminal as well as civil cases." (*In re Wright*, 134 U. S. 136, 10 Sup. Ct. 487, 33 L. ed. 865; 17 Ency. Pl. & Pr. 914.)

The record may be amended at any time so as to make it truly show the proceedings and judgment of the court. (24 Am. & Eng. Ency. Law, 2d ed., 177; *Lynah v. United States*, 106 Fed. 121; *Kaufman v. Shain*, 111 Cal. 16, 52 Am. St. 139, 43 Pac. 393; *Morrison v. Dapman*, 3 Cal. 255; *Gagnon v. United States*, 193 U. S. 451, 24 Sup. Ct. 510, 48 L. ed. 745; *In re Tucker*, 4 Okl. Cr. 221, 111 Pac. 665; *People v. Ward*, 141 Cal. 628, 75 Pac. 306.)

The power of the court to make such corrections is not lost by mere lapse of time, and in this respect the rule as to the

fact of the adjourning of the term has become obsolete. (*Kaufman v. Shain, supra;* Freeman on Judgments, sec. 71; Black on Judgments, secs. 155, 157, 158, 162; *Coop v. Northcutt,* 54 Mo. 128; *In re Tolman,* 101 Me. 559, 64 Atl. 952.)

"That the mistakes and clerical errors of the clerk can be amended and corrected at any time is a principle too well settled to require argument or the citation of authority." (*Walsh v. Colby,* 153 Mich. 602, 126 Am. St. 546, 117 N. W. 207; *Bouldin v. Jennings,* 92 Ark. 299, 122 S. W. 639; *Clark v. Bank of Hennesy,* 14 Okl. 572, 79 Pac. 217, 2 Ann. Cas. 219.)

To the general rule that ignorance or mistake of fact is a defense, there are certain exceptions. It does not apply to statutory offenses; so also a mistake of fact is not always an excuse if, considering the facts as they seemed to the accused, the intention was criminal, if he was engaged in an immoral act or if he voluntarily closed his eyes to the truth or negligently failed to make inquiry. (12 Cyc. 157; *State v. Hardie,* 47 Iowa, 647, 26 Am. Rep. 496; *Dotson v. State,* 62 Ala. 141, 34 Am. Rep. 2; *Behler v. State,* 112 Ind. 140, 13 N. E. 272; *Crabtree v. State,* 30 Ohio, 382; *People v. Dolan,* 96 Cal. 315, 31 Pac. 107; *State v. Ruhl,* 8 Iowa, 447; *Commonwealth v. Murphy,* 165 Mass. 66, 52 Am. St. 496, 42 N. E. 504, 30 L. R. A. 734; *Commonwealth v. Elwell,* 2 Met. (Mass.) 190, 35 Am. Dec. 398; *Fox v. State,* 3 Tex. App. 329, 30 Am. Rep. 144.)

We think the court in the case of *State v. Estis,* 70 Mo. 427, has taken the right view of introducing threats made by parties other than the officer executing the process. Such an offer was made in that case and the court refused it.

"It will be observed at once that the statute itself says nothing about the intent with which the person acts; it in no way deals with the subject of intent,—it only deals with the acts." (*State v. Henzell,* 17 Ida. 726, 107 Pac. 67, 27 L. R. A., N. S., 159.)

Evidence of threats made by others for the purpose of showing lack of intent is immaterial, and was properly barred by the court. (Secs. 11–135, McClain's Crim. Law; secs.

1009–1013, Bishop's New Crim. Law; secs. 2716–2718, Elliott on Evidence; secs. 446–447, Underhill on Criminal Evidence, 2d ed.; *Woodworth v. State,* 26 Ohio St. 196.)

AILSHIE, C. J.—Appellant herein was convicted of the crime of wilfully and unlawfully resisting an officer who was engaged in the discharge of official duty.

It appears that one J. M. Francis, a deputy sheriff, of Bannock county, who had in his possession a summons and an order and writ of injunction for service upon the appellant herein as the manager and representative of the Pocatello Water Co., was about to serve the same on appellant, whereupon appellant made threats and hostile demonstrations and fired a gun in the direction of the officer and thereby interrupted and prevented the service of the process. A verdict of conviction was returned by the jury, and the court thereupon pronounced sentence and judgment directing and requiring that the appellant be confined in the county jail of Bannock county for a period of thirty days and that he pay a fine of $3,000, together with the costs of the trial.

The first question presented goes to the jurisdiction of the court to try the defendant. This action was commenced in Bannock county, and on a showing of prejudice existing among the people of Bannock county and the public excitement over the case, it was transferred to Bear Lake county for trial. Bear Lake county is in the same judicial district as Bannock county, and the court of that county is presided over by Judge Budge. It appears that the judge of that district had ordered a regular term of court to be held in Bear Lake county in October, 1911, and that the term was so held, that the business thereof was disposed of on the 22d day of October, and that on the latter date the judge ordered that the court be adjourned over until the 2d day of January, 1912, at 10 o'clock A. M. Subsequently a regular term of court was held in Bannock county. Thereafter and on the 2d day of January, and in accordance with the previous order of adjournment, court was opened in Bear Lake county with Judge Budge presiding, and the business of the term set

for that day was disposed of, and thereupon the judge ordered that the court stand adjourned until January 9th at 10 o'clock A. M.   The clerk of the court who took the minutes of the proceedings of January 2d wrote the word "June" instead of "January," and so the minute entry showed the term of court had been adjourned to June 9th instead of January 9th.   On the same day of taking this latter adjournment, January 2d, the trial judge made an order for drawing a jury and that it report for duty on the 9th day of January, at 10 o'clock A. M.   This order was correctly made and entered for the appearance of the jury on January 9th.   Court convened on the 9th of January with Judge Bryan of the seventh district presiding, who had been called by Judge Budge to hold this term of court and try this particular case. Counsel for the appellant objected to the jurisdiction of the court and called attention to the minute entry showing that the order had been made adjourning the term of court until June 9th.   Evidence was thereupon taken for the purpose of ascertaining whether a mistake had been made in the entry of this order or not, and the judge found that a clerical error had been made by the clerk in entering the order and making it read "June" instead of "January," and ordered that the entry be corrected and thereupon proceeded with the trial of the case.   Counsel for appellant assign this as error, and allege that Judge Bryan had no jurisdiction to try this case and that he had no power or authority to correct or amend the minute entry which recited that the order of adjournment had been made until June 9th.

This contention is without merit.   It is a familiar and established doctrine that courts always have jurisdiction over their own records to make them conform to the facts and what was actually done at the time.   (*Aetna Fire Ins. Co. v. Boon,* 95 U. S. 117, 24 L. ed. 395; *In re Wright,* 134 U. S. 136, 10 Sup. Ct. 487, 33 L. ed. 865; *Kaufman v. Shain,* 111 Cal. 16, 52 Am. St. 139, 43 Pac. 393; *Gagnon v. United States,* 193 U. S. 451, 24 Sup. Ct. 510, 48 L. ed. 745; *People v. Ward,* 141 Cal. 628, 75 Pac. 306; 17 Ency. Pl. & Pr., p. 909.)

The main contention of the appellant revolves about the action of the court in refusing certain evidence offered with reference to his understanding and belief at the time he made resistance to the officer as charged in the information. The gist of the offer made by counsel for appellant is as follows:

"Defendant's counsel offer to prove that for several days up to and including the Saturday preceding the alleged resistance of August 21, 1911, threats had been made by various parties, some known and others unknown, which threats were either made directly to and in the hearing of the defendant or were communicated to him; such threats being in substance as follows: That he and the waterworks would be blown to hell; that he would be carried to the south of the Academy, meaning to the cemetery in Pocatello; that something dreadful would happen to him and the works, meaning the waterworks; and warning him to look out; also that information was conveyed to him on the Saturday preceding, or two days prior to the 21st day of August, to the effect that a mob was talked of and was being formed for the purpose of shooting or hanging him; that these threats came, some of them by letter addressed to the defendant; some were communicated directly to him and in his presence in the office of the waterworks company in Pocatello, and others came over the phone directly to him and to employees of the water company in the water office and were communicated to the defendant.

"Defendant offers to prove these facts for the purpose of showing in addition to that above stated, that the defendant at the time of the alleged resistance was actuated in his conduct solely by fear, the result of these threats to destroy his life and the property of the water company and for the purpose of negativing the idea of any wilful resistance on the part of defendant to the service of the process by an officer."

The court excluded this offered evidence and the ruling is assigned as error. The statute (sec. 6515) under which the prosecution is had is as follows:

"Every person who wilfully resists, delays, or obstructs any public officer, in the discharge, or attempt to discharge,

of any duty of his office, when no other punishment is prescribed, is punishable by fine not exceeding five thousand dollars, and imprisonment in the county jail not exceeding one year."

Subdivision 1 of sec. 6301, Rev. Codes, provides as follows:

"The word 'wilfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."

It will be observed that under the provisions of sec. 6515 and 6301, it is not necessary that any specific intent existed to violate the law or injure anyone, and that it was only necessary for the party to have acted voluntarily and of his own accord, knowing that the person resisted was an officer engaged in the discharge of his official duty. The same principle is involved under this statute that is involved in the statute which provides for the issuance and negotiation of warehouse receipts. In considering a violation of that statute in the case of *State v. Henzell*, 17 Ida. 725, 107 Pac. 67, 27 L. R. A., N. S., 159, this court said: "It will be observed at once that the statute itself says nothing about the intent with which the person acts. It in no way deals with the subject of intent; it only deals with acts." It is necessary, we think, in a case of this kind, for the state to show that the person who was resisted was at the time an officer, and that the defendant knew such fact, and that the defendant also knew at the time that he offered resistance that the officer was attempting to serve process or perform some official act or was engaged in or was in pursuit of some official duty. The mere fact that the party was an officer would of itself not call into operation the provisions of the statute (sec. 6515) or entitle him to invoke its protection, unless he was also engaged in the performance or discharge of some official duty. The state only clothes officials with its protection and immunity from resistance when employed in the discharge of public or official duty. When so employed, the interests of the public and of the state are superior to the rights of any

individual, and so the state says to every individual, "You cannot,—you must not, offer resistance to these officials when going about the discharge of the public service."

This is well expressed by Wharton, in the eleventh edition of his work on Criminal Law, sec. 852, wherein he says:

"If the defendant, indicted for resisting an officer, can prove that he was ignorant that the party resisted was an officer, this is a defense to the indictment for resistance; but not to that for an assault, if undue violence were used. . . . . It is against the policy of the state to clothe its servants with official immunities, except when engaged in official acts. The immunity belongs not to the individual, but to the office; and if the immunity is to be vindicated, the office must be proclaimed. To punish resistance to a secret officer as a crime turns first the officer into a spy, and then the spy into a despot."

In *State v. Murphy* (Del.), 66 Atl. 335, the court said: "In prosecution for assault on a constable while levying execution on defendant's property, where defendant did not know that the person assaulted was a constable or that he held a writ of execution against him, he was not guilty." (9 Ency. of Evidence, sec. 139.)

In the case at bar, the evidence offered was not tendered for the purpose of disproving defendant's knowledge of the official character of the deputy sheriff or of the purpose of his calling to see appellant. It was rather offered for the purpose of showing that when the appellant did act he was acting through fear rather than through ignorance. Now, on the question of the appellant's knowledge as to the official character of the deputy sheriff and the purpose of his call, there is really but little question. Appellant practically admitted in his evidence before the jury that he did know of his official character and that the deputy or chief of police stated the purpose of the call. At any rate, there was an abundance of evidence on this point to go to the jury and justify them in finding as a matter of fact that the appellant did know the official character of the deputy and the purpose for which he had come. The evidence also discloses that there were

only two persons there,—the deputy sheriff and the chief of
police of the city of Pocatello. This did not constitute a mob.
(27 Cyc. 812.) Had appellant proven that this officer was
attended by an excited mob or a number of persons making
hostile and threatening demonstrations, it might have in-
fluenced the jury in returning their verdict, and we are not
prepared to say that it should not have done so. That is not
the case, however, here, and we do not think there was any
error committed by the trial court in refusing to admit the
class of evidence that this tender discloses the appellant de-
sired to introduce. There was abundant evidence submitted
to the jury to justify them in returning a verdict of guilty
against appellant.

It is unfortunate when disputes and controversies over the
civil rights of parties, whether they be individuals or cor-
porations,—whether those corporations be private or public,—
reach that acute stage where either side feels called upon to
resort to the criminal law to further their objects and pur-
poses. This is likewise true where either has thought it neces-
sary or expedient to violate a penal statute in order to ac-
complish his or its purpose. It is in such cases, however, that
the real purpose and object of the criminal law is too fre-
quently overlooked and abused and in which the penalties
prescribed by such statutes are sometimes invoked in a vin-
dictive spirit. In the present case, we think the conviction
was properly had, and that no legal right of the appellant has
been violated in the trial of the case. We are strongly per-
suaded, however, that this is a case in which the penalty im-
posed is excessive when viewed in the light of the circum-
stances of the case. A running fight was going on between
the company represented and managed by this appellant and
the city of Pocatello. The officers of the water company
doubtless felt that the company was supplying the city and
its inhabitants with water at a reasonable rate and that they
were acting within their legal rights. On the other hand, the
city authorities and inhabitants of Pocatello were equally con-
vinced that they were being charged an unreasonable and ex-
orbitant rate. This controversy had reached an acute state

where both sides had become biased and inflamed. Under such circumstances, it was much easier for anyone interested to overstep the bounds of the law than it would be under ordinary circumstances when no such prejudice or provocation existed. We think these facts and circumstances ought to be taken into consideration in imposing a penalty for violating a statute such as the one under consideration.

In the light of these considerations, the writer of this opinion feels that the judgment in this case ought to be modified to the extent of reducing the imprisonment to not exceeding ten or fifteen days and the fine to $1,000, and I am in favor of so holding. My associates, however, are opposed to the sentence of imprisonment and favor wholly reversing the judgment of imprisonment and reducing the fine to the sum of $1,000. It is therefore the order of the majority of the court that the judgment of imprisonment be reversed and set aside and that the judgment be so modified as to impose a fine of $1,000 and all costs of the case upon the defendant. The trial court is directed to enter a modified judgment in accordance herewith. From this judgment the writer dissents in part as above indicated.

Sullivan and Stewart, JJ., concur.