**Sam SCHULZ, Plaintiff,**

v.

**Clark County Sheriff Ralph LAMB et al., Defendants.**

**Civ. No. LV–1709 RDF.**

United States District Court, D. Nevada.

Nov. 21, 1975.

Emilie N. Wanderer, Las Vegas, Nev., for plaintiff.

Cromer, Barker & Michaelson, Las Vegas, Nev., for defendants.

## MEMORANDUM OPINION

ROGER D. FOLEY, Chief Judge.

This case was tried to the Court without a jury on February 22nd, 1973, before District Judge William N. Goodwin, sitting by designation in this district.

At the close of plaintiff's case in chief, Judge Goodwin granted Sheriff Lamb's and the International Hotel's motions for involuntary dismissal under Rule 41(b), F.R.C.P. At the close of all of the evidence, Judge Goodwin orally made his findings of fact and stated his conclusions of law, and judgment was entered in favor of the defendants, Deputy Sheriffs Gene Dessel and Alfred Leavitt.

On appeal, the Ninth Circuit affirmed the 41(b) rulings but reversed the judgment in favor of defendants Dessel and Leavitt and remanded the case to this Court for further proceedings, finding that "the record does not sustain the district court's conclusion that they (Deputies Dessel and Leavitt) had a legally justified basis for detaining and questioning Schulz." *Schulz v. Lamb*, 504 F.2d 1009 (9th Cir. 1974).

After the mandate came down, rather than cause Judge Goodwin to return to Las Vegas, I met with counsel on the 12th of September, 1975, and after considerable discussion it was agreed that I would conduct a further trial, allowing counsel to supplement the record by introducing additional evidence without limitation, and then take the matter under submission upon the original and the supplemental records. The further trial was held before me on October 6, 1975, and the case submitted to me on November 6, 1975, together with plaintiff's motion to strike, filed on October 14, 1975. The motion to strike is denied.

## JURISDICTION

Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. § 1332. Plaintiff is a citizen of California; the individual defendants are citizens of Nevada; the defendant hotel is a Nevada corporation with its principal place of business in Nevada. The requisite amount has been alleged. This Court has jurisdiction.

## FACTS

I have read the transcript of testimony and examined the exhibits received in evidence at the first trial. I heard the testimony of Michael Warianka, Samuel Schulz, Gene Dessel and Alfred Leavitt on October

6th, 1975. I agree with the statement of facts made by the Court of Appeals. In her opinion, Judge Hufstedler set forth the facts to be as follows:

"Schulz and his family took a holiday in Las Vegas, Nevada. As Schulz was preparing to return to Los Angeles, his mother became separated from the other members of the party during their visit to the Las Vegas International Hotel. He searched for her, first taking an elevator to the third floor, where there were public facilities, and then to a higher floor, where there was a lounge. He took an elevator back to the first floor when he did not find her at those two locations.

"When Schulz got off the elevator, Dessel and his partner Levitte were standing in the lobby. Dessel testified that there had been a high burglary rate in Las Vegas hotels, and that he and his partner had been assigned to certain hotels with instructions 'to roam the rooming areas and stop anyone that looked suspicious, that was loitering about the rooming areas.' Dessel recognized Schulz as a person he had seen leaving the rooming area of another hotel earlier that same day, although he could not recall which hotel it was. According to Dessel, Schulz walked away from the elevator very quickly and appeared to be nervous. Dessel, who had not been suspicious of Schulz when he observed him before, became suspicious upon seeing Schulz apparently emerging from the rooming area of a second hotel.

"Dessel caught up with Schulz, showed Schulz his identification, and asked him if he was a guest at the hotel. Schulz said 'No.' Dessel then asked Schulz for identification; Schulz told Dessel his name. When Dessel asked Schulz why he had been coming out of the rooming area of another hotel earlier in the day, Schulz replied, 'This is ridiculous; I'm not answering any more questions,' and walked away.

"Dessel told Schulz to stop, but Schulz kept on walking. Dessel caught up with Schulz and advised him that he was under arrest for prowling. At trial, Dessel testified that he arrested Schulz because he was walking away and did not respond to further questions. Dessel said he attempted to handcuff Schulz who became 'combative,' and Levitte had to assist Dessel. The two deputies took Schulz directly to jail. He was released six hours later after his parents supported his innocence." 504 F.2d 1010, 1011.

Judge Goodwin's oral findings of fact are set forth in the transcript, pp. 166–172. Judge Goodwin had a far better opportunity than I did to observe the demeanor and manner of the witnesses and to determine their credibility. I concur with Judge Goodwin and note that his findings are consistent with Judge Hufstedler's statement of facts. Judge Hufstedler's statement of facts is consistent with the testimony of Officers Dessel and Leavitt, but in important particulars is inconsistent with plaintiff's testimony. Wherever there is conflict between plaintiff's testimony and that of the defendant officers, Judge Goodwin has credited the officers' testimony and has discredited the plaintiff's contrary testimony. So do I.

## LIABILITY OF THE TWO OFFICERS

In the proceedings had before me, plaintiff took the position that the Court of Appeals had established as the law of the case that the defendants Dessel and Leavitt are liable to the plaintiff for false arrest and imprisonment and that the only thing left for the District Court to do on remand is to assess damages.

The law of this case established by the Court of Appeals is that, based upon the evidence adduced at the first trial, the detention of the plaintiff was unlawful in that the officers' attempts to point to specific articulable facts and rational inferences to be drawn therefrom, justifying a founded suspicion, falls short of the requirements of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The additional evidence taken before me on October 6, 1975, does not add any significant, specific, articulable facts or rational inferences to sustain a founded suspicion.

■ Hence, I am bound by the decision of the Court of Appeals for the Ninth Circuit and hold that the detention of Schulz was unlawful. (Were it not for the binding effect of the decision of the Ninth Circuit, I would have concluded, as did Judge Goodwin, that the evidence supports a founded suspicion and therefore the officers were justified in detaining, interrogating and, under the circumstances, arresting and incarcerating the plaintiff.)

■ The elements of false imprisonment in Nevada were discussed in *Marschall v. City of Carson*, 86 Nev. 107, 464 P.2d 494 (1970):

"To establish false imprisonment . . ., it is only necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification therefore (sic)." 86 Nev. 110, 464 P.2d 497.

These elements are present here: (1) Schulz was restrained of his liberty (he was handcuffed and taken to jail); (2) the officers did use force to restrain him; and (3) the remand of the Ninth Circuit establishes that the detention was without any legal cause or justification, as required by *Terry v. Ohio*, supra, and *United States v. Ward*, 488 F.2d 162, 169 (9th Cir. in banc 1973).

■ According to testimony at both trials, Officer Dessel was responsible for the unlawful detention of Schulz. Officer Leavitt, in fact, did not approach Dessel and Schulz until after Dessel had placed Schulz under arrest and Schulz became uncooperative. Leavitt simply assisted his partner in subduing an uncooperative man who had been stopped and arrested by Dessel. (See testimony of Officer Dessel from the first trial, Tr. at 86–88; testimony of Officer Leavitt from the first trial, Tr. at 105–106.) Therefore, I hold that only Officer Dessel is liable for the unlawful detention of Schulz. Under the law of Nevada as discussed in *Marschall*, supra, the other elements of an action for false imprisonment

have been established, and Officer Dessel is liable for the false imprisonment of Schulz.

## DAMAGES

■ In an action for false imprisonment, several types of damages are recoverable. In *Lerner Shops v. Marin*, 83 Nev. 75, 423 P.2d 398 (1967), the Nevada Supreme Court outlined the types of recoverable damages:

"A successful plaintiff is entitled to compensation for all the natural and probable consequences of the wrong, including injury to the feelings from humiliation, indignity and disgrace to the person, and physical suffering. The injury to health may be due to mental suffering. [Citations omitted.] This court, however, has limited the claim for future pain and suffering arising from subjective physical injury, and in such cases the claim must be substantially supported by expert testimony to the effect that future pain and suffering is a probable consequence rather than a mere possibility." 83 Nev. at 79, 423 P.2d at 401.

In assessing damages, however, the plaintiff's conduct and the provocation by him may be shown in mitigation of the claimed damages. Facts and circumstances attending the arrest or imprisonment which may be inadmissible on the question of liability may be received in mitigation of damages. See 32 Am.Jur.2d, "False Imprisonment," § 104.

■ Had Schulz been cooperative here, the detention would have been brief and no arrest would have followed. The intrusion occasioned by a brief detention to ascertain identification and explain one's presence is minimal and permissible under Nevada's "Stop-and-Frisk" law, NRS 171.123. Here, the Ninth Circuit's remand establishes that the circumstances surrounding Schulz' detention did not support the "founded suspicion" required for a Terry-type stop; similarly, these circumstances do not "reasonably indicate" that criminal activity is afoot in order to justify the stop under the Nevada statute.[1]

---

1. This case illustrates the difficult task of a peace officer in trying to conform his on-the-

street conduct to the standards of appellate court decisions. Here, Officer Dessel acted

But, had Schulz been cooperative and advised Officer Dessel that (1) he was in Las Vegas with relatives; (2) they had checked out of the Sahara Hotel earlier in the day; (3) their return to Los Angeles was delayed because of the high desert winds near Barstow; (4) he had packed his wallet with identification in a suitcase in the trunk of his car for the trip back to Los Angeles; and (5) the car was parked in the hotel parking lot, the entire incident could have been resolved in a matter of minutes. Instead, Schulz walked away from Dessel after no more than sixty seconds of discussion, during which he had only given Dessel his name and informed Dessel that he was not a guest at the hotel. When questioned further, Schulz responded, "This is ridiculous; I'm not answering any more questions," and walked away. At this point, Officer Dessel caught up to Schulz and arrested him for prowling. Again, Schulz did not submit peacefully; the assistance of Officer Leavitt was required before Schulz could be subdued and taken to the Clark County Jail. See Judge Goodwin's discussion of these events and his evaluation of the credibility of the conflicting testimony at pp. 166–172 of the transcript of the first trial.

▋ Though plaintiff's counsel did not raise the issue, one might argue that Schulz had a right to resist the unlawful detention and arrest. This right did exist at common law, but the clear trend today is to take away that right and require an individual to submit to an unlawful arrest and pursue his remedies through a civil suit for false imprisonment. See Section 5 of the Uniform Arrest Act, adopted with minor variations in California (Section 834a of the Penal Code), Rhode Island, New Hampshire, and Delaware; see also Section 3.04(2)(a)(i)

of the Model Penal Code. The well-reasoned opinion of the Supreme Court of Alaska in *Miller v. State*, 462 P.2d 421 (Alaska 1969), explains that the legality of a peaceful arrest is a question which should be determined by courts of law and not through a trial by battle in the streets. 462 P.2d at 426–427. Idaho has also adopted this rule, citing *Miller* with approval. *State v. Richardson*, 95 Idaho 446, 511 P.2d 263, 267–268 (1973). See "Annotation: Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest," 44 A.L.R.3d 1078. Though the courts of Nevada have not considered this question, this Court feels that Nevada would follow the better rule as set out in *Miller, Richardson*, and numerous California cases which have construed the California statute. A private citizen may not use force to resist a peaceful arrest by one he knows is an authorized peace officer, regardless of whether the arrest is illegal in the circumstances of the occasion. This rule should also apply to illegal detentions. Here, Schulz acknowledges that Officer Dessel showed him his badge twice; Schulz does not deny that he knew Dessel to be an authorized peace officer. Therefore, he should have cooperated with Dessel, even though the detention and arrest were unlawful.

▋ Under the circumstances of this case, any injuries which plaintiff has suffered [2] were the result of his own uncooperativeness. The only aspect of this case for which plaintiff's damages were not caused by his own actions was the period of time between the initial stop by Dessel and the response of Schulz that he need not answer any questions. For this detention, plaintiff is entitled to damages in the amount of $1.00. Plaintiff is not entitled to any other

"reasonably," according to his feelings that something suspicious was going on. Then, with the benefit of the hindsight information that Schulz was, in fact, innocent, an appellate court holds that the articulable facts and inferences surrounding the stop were not sufficient to support a founded suspicion that criminal activity was afoot. Therefore, an officer who is not harassing an individual and who is trying to perform his assigned duty of investigating

hotel burglaries, is saddled with liability for false imprisonment, based on an appellate court's detached evaluation of what actually occurred that July evening.

2. With the resolution of the damages issue here, this Court makes no finding with regard to the adequacy of the proof presented by plaintiff to support the claimed amount of damages.

damages. Plaintiff shall also recover the costs of this litigation.

This opinion constitutes this Court's findings of fact and conclusions of law. Let judgment be entered accordingly.