755 P.2d 471

**STATE of Idaho,**
Plaintiff–Respondent–Appellant
on Appeal,

v.

**Jeannie A. WILKERSON,**
Defendant–Appellant–Respondent
on Appeal.

No. 16569.

Court of Appeals of Idaho.

May 3, 1988.

Petition for Review Granted
June 30, 1988.

Jim Jones, Atty. Gen., Lynn Thomas, Sol. Gen., Boise, for the State.

Jonné E. Kohler, Nampa, for Wilkerson.

WALTERS, Chief Judge.

Jeannie Wilkerson attempted to prevent a tow truck from removing a damaged vehicle from the scene of an accident involving her son. A police officer intervened on behalf of the tow truck operator and arrested Wilkerson. She was charged with and convicted by a jury of violating I.C. § 18–705, which provides:

> *Resisting and obstructing officers.*—Every person who wilfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office or who knowingly gives a false report to any peace officer, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year.

The magistrate fined Wilkerson $300 plus court costs and sentenced her to fifteen days in the county jail. On appeal, the district court concluded that the officer may not have been discharging a "duty of his office." The court set aside the conviction and remanded the case for a new trial. The state's appeal from the district court's decision requires us to examine the scope of I.C. § 18–705. We affirm the district court's decision.

There is little dispute regarding the acts of the parties involved in this case. Late one fall evening, Wilkerson's adult son and two of his friends were in a pickup truck which left the road and overturned in an onion field beside the roadway. He obtained aid at a nearby residence. Wilkerson was summoned. When she arrived at the accident scene, she found the investigating officer, John Taylor, already present. She indicated to Taylor that it was her son's pickup and her son was involved "some way." She immediately left and proceeded to the nearby residence to aid her son.

Taylor followed Wilkerson to the residence. There he attempted to question her son regarding the accident. The son, who was twenty-two years old, said he had been drinking beer; that he had been riding in the pickup with two juveniles; that he was not the driver; and that he did not know what happened to the other two occupants of the vehicle. However, Wilkerson, who apparently had been in contact with an attorney, advised her son not to answer further. Wilkerson indicated she was going to transport her son to the hospital. Taylor asked that the son remain at the hospital until he arrived.

Apparently Taylor had called for a tow truck when he first arrived at the accident scene. He informed Wilkerson, "[W]hen you folks get done, you can come down to the County Sheriff's Office and get your truck, it's been impounded, okay?" During the ensuing conversation, Wilkerson explained that she had independently called another towing company to tow the pickup "home." Taylor responded that the vehicle would be impounded at the sheriff's office until the investigation was completed. He informed Wilkerson that a failure to cooperate would result in a citation for obstructing an officer in the performance of his duties. Taylor then returned to the scene of the accident.

The tow truck requested by Taylor soon arrived. The operator righted the pickup and began to attach it to his tow truck. At that point, Wilkerson arrived, stood in front of the pickup within the tow truck rigging, and demanded that the tow truck operator release the vehicle. She explained that she wanted another towing firm to remove the vehicle. The operator summoned Taylor, who was up on the roadway.

Taylor asked Wilkerson to remove herself from the rigging and to permit removal of the pickup. When she refused, Taylor radioed his supervisor. The supervisor instructed Taylor to arrest Wilkerson for obstructing an officer in the performance of a duty. According to the tow truck operator, Taylor then warned Wilkerson that continuing to block removal of the pickup would result in her arrest. Her response was: "Arrest me. I won't move. This is my rig." When she refused to move, Taylor forcibly removed her from the rigging, handcuffed her, and placed her in his patrol car. After Taylor returned to the pickup, Wilkerson began to kick a window of the officer's vehicle. Taylor returned to his patrol car, hobbled Wilkerson, and with the assistance of paramedics treated her for hyperventilation. As indicated above, Wilkerson subsequently was cited for violating I.C. § 18–705.

At trial, Wilkerson attempted to prove that Taylor was not performing a lawful duty when he intervened in her dispute with the tow truck operator. Conflicting evidence was presented regarding Taylor's purpose in having the vehicle towed. Taylor testified that he was doing so to continue the investigation and to clean up the accident scene. He explained that leaving a damaged vehicle at the scene leads to repeated inquiries from the public and, therefore, removal of all vehicles is standard procedure. However, he also described his purpose as removing the vehicle from private property. He admitted that it was not being impounded as evidence, or as a stolen vehicle, nor did it block or impede traffic or present any other hazard since it rested off the right-of-way in the onion field. After Wilkerson's arrest, the pickup was towed to the towing company's impound lot, not to the sheriff's lot.

At trial, Wilkerson contended that when Taylor instructed the tow truck driver not to honor her request to release the pickup,

Taylor was acting contrary to state law and therefore was without authority. She relied upon I.C. § 49–3611, which reads:

*Charges not otherwise provided for.—* Every towing firm, employee or agent in the process of towing, removing or impounding a vehicle as directed by an authorized officer, except vehicles found under extraordinary circumstances [not applicable here] ... shall upon request of the owner or his authorized agent, release the vehicle at the scene. If the vehicle is attached to the tow truck, or otherwise "in tow," the regular, scheduled tow fee may be charged. When the vehicle is not yet "in tow" at the time of request, the release must be made, and no charge may be assessed except a customary and reasonable charge for mileage one way from the towing firm's place of storage to the scene plus the usual fee for the tow truck operator. If the authorized fee is not tendered by the owner or his agent, the towing operator may complete the impoundment, towing or removal, as authorized. ·

At trial, Wilkerson requested the following jury instructions.

[E]xtraordinary circumstances means any situation where an emergency exists or public safety is endangered or any situation in which a motor vehicle is blocking or impeding traffic or is causing a hazard or has the potential of impeding any emergency vehicle or is impeding any snow removal or other road maintenance operation. [*See* I.C. § 49–3601(7).]

[Abandoned motor vehicle means] any motor vehicle observed by an authorized officer or reported by a member of the public to have been left within the limits of any highway or upon the property of another without the consent of such property owner for a period of twenty-four (24) hours or longer, except that a vehicle shall not be considered abandoned if its owner-operator is unable to remove it from the place where it is located and has notified a law enforcement agency and requested assistance. [*See* I.C. § 49–3601(2).]

If you find that the Wilkerson pickup was not an abandoned motor vehicle and if you find that the Wilkerson pickup was not a stolen vehicle and if you find that the Wilkerson pickup was not involved in any extraordinary circumstances as defined, then you must find that Officer Taylor was acting outside the scope of his duty.

If you find that the Wilkerson pickup was not an abandoned motor vehicle and if you find that the Wilkerson pickup was not a stolen vehicle and if you find that the Wilkerson pickup was not involved in any extraordinary circumstances as defined, then you must find the Defendant, Jeannie Wilkerson, not guilty.

Relying upon *State v. Richardson,* 95 Idaho 446, 511 P.2d 263 (1973), *cert. denied,* 414 U.S. 1163, 94 S.Ct. 928, 39 L.Ed.2d 117 (1974), where our Supreme Court held that an individual may not forcefully resist an arrest, the magistrate concluded that the lawfulness of the officer's act was immaterial and refused to give Wilkerson's requested instructions. Wilkerson appealed to the district court. The district court reversed. The district court concluded that, because "Wilkerson was not charged with resisting arrest but rather with obstructing an officer in performing his duty," *Richardson* was not applicable to this case and the questions of fact framed by Wilkerson's rejected jury instructions should have been presented to the jury. The court recommended modifications of these instructions to address Taylor's role as a crime investigator, and remanded the case for a new trial.

On appeal from the district court order, the state contends that the *Richardson* rule should apply to any obstruction of an officer's will. Alternatively, the state contends that Taylor was acting in his role as an investigator when he sought to impound the pickup. The state asserts that the officer's actions were authorized by law, and by I.C. § 31–2202 in particular (defining the duties of a sheriff), and were not contrary to section 49–3611. Wilkerson, in turn, supports the district court's decision not to apply the *Richardson* rule. She further argues that a remand to the magistrate's division is unnecessary because, as

a matter of law, Taylor was not performing a duty of his office when he countermanded her request to release the pickup.

We begin our analysis by reviewing the allegedly criminal conduct for which Wilkerson was convicted. The complaint simply tracked the language of I.C. § 18–705, charging Wilkerson with "[r]esisting and obstructing an officer in the discharge of dutys [sic]." The particular criminal act with which Wilkerson was charged apparently was not identified until the trial. The state's evidence reveals that Wilkerson obstructed the effort of a tow truck operator who had been called by a sheriff's deputy to remove an overturned pickup truck. When the operator insisted on completing the tow, Wilkerson placed her body between the tow truck and the pickup. At the operator's request, the deputy intervened in the dispute. The deputy ordered Wilkerson to get out of the operator's way. She refused to do so. The deputy then consulted with his superiors and was instructed to arrest Wilkerson if she did not move. The deputy told Wilkerson she was under arrest. Wilkerson again refused to move and replied, in essence, with "go ahead and arrest me." The deputy proceeded to remove her by force and to place her in his patrol car.

It is undisputed that this forcible removal effectuated the announced arrest. Although Wilkerson struggled against the deputy's use of force, the state has not maintained that the conduct charged in the criminal complaint was expected or intended to include "resistance to an arrest." Indeed, the state could not logically claim that Wilkerson was initially arrested for conduct incident to, or following, the arrest itself. Rather, Wilkerson was arrested and apparently charged and prosecuted for her conduct *before* the arrest. That conduct consisted of obstructing the tow truck operator and refusing to obey the deputy's order to cease that obstruction.

Next we examine the historical limits of a citizen's privilege to resist a police officer. At common law, a person unlawfully arrested could use reasonable force to resist such an unlawful arrest. *See John Bad Elk v. United States*, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900). In *Richardson*, our Supreme Court diverged from the common-law rule in applying Idaho's former forceful resistance statute.[1] The Court held that if a person "is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest." *State v. Richardson*, 95 Idaho at 451, 511 P.2d at 268. The Court grounded its decision upon the risk of escalating violence through resistance to an arguably unlawful arrest. Tracking the reasoning of the Supreme Court of Alaska in *Miller v. State of Alaska*, 462 P.2d 421 (1969), the Idaho Su-

---

1. At this point we draw particular attention to the facts and the law in *Richardson*. There, in the course of arresting Richardson for disorderly conduct that had occurred in the presence of the arresting officers, an altercation "broke out." Following the ensuing fight with the officers, "[a] criminal complaint was filed against Richardson charging him with the felony of resisting a police officer by means of violence." 95 Idaho at 447, 511 P.2d at 264. The opinion characterizes Richardson's conduct as "resisting arrest." Although the specific statute which Richardson allegedly violated is not mentioned in the opinion, evidently he was charged under former I.C. § 18–2703. That statute provided:

    *Resisting officers.*—Every person who attempts by means of any threat or violence to deter or prevent any executive officer from performing any duty imposed upon such officer by law, or who knowingly resists by the use of force or violence, such officer, in the performance of his duty, is punishable by fine

not exceeding $5,000 or imprisonment in the state prison not exceeding five (5) years, or both.

Even though the validity of Richardson's arrest for disorderly conduct does not appear to have been at issue in the case, our Supreme Court announced the broad rule that "if a person has reasonable ground to believe he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest.... Regardless of whether the arrest is illegal under the circumstances of the occasion, we hold that an individual may not use force to resist an arrest by one he knows or has good reason to believe is an authorized peace officer in the performance of his duties." 95 Idaho at 451, 511 P.2d at 268.

The statute, I.C. § 18–2703, was later repealed. *See* 1981 Idaho Session Laws, ch. 319, § 1.

preme Court held that instead of forceful resistance, an arrestee should seek relief under our false arrest statutes. Thus the court implicitly construed the language of that statute, a "duty imposed upon such officer by law," to encompass the making of an unlawful arrest.

■ *Richardson* is in line with the modern trend permitting forceful resistance to an arrest only when excessive force is used by the officer. *Schulz v. Lamb*, 416 F.Supp. 723 (D.Nev.1975), *reversed and remanded on other grounds*, 591 F.2d 1268 (9th Cir.1978); *see also United States v. Heliczer*, 373 F.2d 241, n. 3 (2d Cir.), *cert. denied*, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967). *See generally* Annotation, *Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest*, 44 A.L. R.3d 1078 (1972). However, this rule is not without limits. For instance, an individual cannot be convicted of a crime for failing to obey a police officer's command if that command itself is violative of the United States Constitution. *Wright v. Georgia*, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963). *Cf. Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945) (on prior restraint orders). *See also City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (on First Amendment limit of obstruction statutes).

We now turn to the particular statute Wilkerson was charged with violating. Up until 1981, Idaho's criminal code included two resistance statutes—one, the forceful resistance statute construed in *Richardson*, described a felony; the other, the statute applied here, describes a misdemeanor. Although both statutes respectively refer to resisting an officer "in the performance of his duty" and "in the discharge ... of any duty of his office," section 18–705 apparently includes less violent means of calling an officer's authority into question. The question before us is whether section 18–705, like former section 18–2703, makes it a crime for an individual to obstruct or resist a public officer who is not properly or lawfully discharging a duty as prescribed by law. In other words, how broadly should the "duty" embodied in section 18–705 be construed?

The primary goal in statutory construction should be to ascertain legislative intent. *Bastian v. City of Twin Falls*, 104 Idaho 307, 658 P.2d 978 (Ct.App.1983). If the language of a statute is ambiguous, the court must consider the social and economic results which would be effectuated by its interpretation of the statute. *Smith v. Dept. of Employment*, 100 Idaho 520, 602 P.2d 18 (1979). Policy grounds and reasonableness may also be considered. *Id.*

Resolution of the question presented here requires an exploration of "the difficult, dangerous, and subtle field where the essential office of the policeman impinges upon the basic freedom of the citizen." *Wainwright v. New Orleans*, 392 U.S. 598, 599, 88 S.Ct. 2243, 2244, 20 L.Ed.2d 1322 (1968) (J. Fortas concurring in dismissal). Formulating a standard of conduct for an individual confronted by what he believes is an unlawful assertion of authority by a police officer necessarily requires a careful balancing of the public policy against physical violence and the inherent right of the individual to be free from oppressive or unauthorized acts committed under color of government authority. While nonviolent disobedience to apparent authority has a long and honorable history in American society, forceful disobedience—even if well founded—may lead to violence and, as explained in *Richardson*, is to be discouraged.

Unlike the *Richardson* felony statute, which applied to resistance or deterrence of an executive officer by threat, force, or violence, I.C. § 18–705 defines a misdemeanor and apparently encompasses mere passive resistance, delay, or obstruction of a public officer. *See State v. Wozniak*, 94 Idaho 312, 486 P.2d 1025 (1971). In *State v. Winter*, 24 Idaho 749, 135 P. 739 (1913), our Supreme Court addressed the elements of the predecessor to § 18–705. The Court said:

> It is necessary, we think, in a case of this kind, for the state to show that the person who was resisted was at the time an officer, and that the defendant knew

such fact, and that the defendant also knew at the time that he offered resistance that the officer was attempting to serve process or perform some official act or was engaged in or was in pursuit of some official duty. The mere fact that the party was an officer would of itself not call into operation the provisions of the statute (sec. 6515) or entitle him to invoke its protection, unless he was also engaged in the performance or discharge of some official duty. The state only clothes officials with its protection and immunity from resistance when employed in the discharge of public or official duty. When so employed, the interests of the public and of the state are superior to the rights of any individual, and so the state says to every individual, "You cannot—you must not, offer resistance to these officials when going about the discharge of the public service."

*Id.* at 757–58, 135 P. at 740. Aside from the addition of the alternative element of knowingly giving a false report, the elements of section 18–705 remain the same. Wilkerson does not deny being aware of the officer's identity, she argues only that Taylor was not performing or discharging an official duty.

The duties of a police officer are many and varied. *See* I.C. § 31–2202 (setting forth duties of sheriffs). In particular, Idaho Code § 49–3608 vests authorized officers with the power to remove abandoned vehicles to a place of safety, although arguably not in the manner pursued by Taylor in the instant case. *See* I.C. § 49–3619. In addition, our Supreme Court has recognized a police officer's "community caretaking function," which is divorced from the investigative function. *Matter of Clayton*, 113 Idaho 817, 748 P.2d 401 (1988). *See Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

On its face, § 18–705 does not require that the "duty" being performed by the officer be lawful. *Compare* Wyo.Stat.

§ 6–5–204(a) (1977) (subject of vagueness challenge in *Newton v. State*, 698 P.2d 1149 (Wyo.1985)). In the arrest-resistance context courts have defined official duties broadly. *See e.g., United States v. Heliczer, supra*, 373 F.2d at 245 (" 'Engaged in ... performance of official duties' is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. It cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful."). But Wilkerson was not charged with resisting arrest. Rather, she contends she obstructed the officer's attempt to perform a less significant act, having an "abandoned" vehicle removed, in a manner which was arguably contrary to state law since it was not established that the vehicle had been abandoned.

As our Supreme Court recognized in *Richardson*, improvements in our laws and judicial process now provide alternative channels for the oppressed, which did not formerly exist. These advances mean that recourse to force or violence is rarely necessary or advisable for an individual in disagreement with police objectives. However, we are also mindful of the possibility that overzealous officers could abuse this rule by inciting otherwise law-abiding individuals to commit crimes by obstructing the officer's unlawful acts. We also are aware of the continuing debate regarding a citizen's duty to unquestioningly obey authority.[2] Police are necessarily provided with discretion in exercising their duties, *see* H. GOLDSTEIN, POLICING A FREE SOCIETY, ch. 5 (1977), but passive disobedience has a legitimate role in testing the limits of that authority. *See* M. KADISH AND S. KADISH, DISCRETION TO DISOBEY: A STUDY OF LAWFUL DEPARTURES FROM LEGAL RULES, ch. 3 (1973). Therefore, a balance between "law and order" and individual freedom must be struck.

---

2. For an intriguing series of essays of this subject, *see* 18 Georgia Law Review 4, *Symposium* —*The Duty to Obey the Law* (1984).

■ We can easily understand why the magistrate below felt he was bound by the holding of *Richardson*. However, despite that ruling, we are not prepared to accept the proposition that our legislature intended to criminalize *passive* disobedience to any act of a police officer. Many of the reasons to broadly construe the term "duty" that were present in *Richardson* are not presented here. Passive resistance does not present the same immediate risk of violence and physical harm as does forcible resistance. Nor, outside of the arrest context, is the officer presumptively confronting an individual believed to have previously committed a crime. For these and the other reasons set forth herein, we believe the legislature intended that the term "duty" in I.C. § 18–705 should be interpreted more narrowly than the comparable term found in I.C. § 18–2703 and construed in *Richardson*. We hold that where an individual refuses to obey an order or obstructs an act of a public officer which is contrary to the law, be it statute or constitution, that individual does not violate I.C. § 18–705. We interpret "duty" as used in that statute to encompass only those lawful and authorized acts of a public officer. To hold otherwise would clothe an officer with protection from resistance based only on his status as an officer and would render the "in the discharge, or attempt to discharge, of a duty of his office" language of the statute mere surplusage.

Wilkerson did not initiate the physical contact with the officer by assaulting him. She apparently resorted to force only to prevent the officer from removing and arresting her. Like our Supreme Court, we endorse resolution of disputes in the courts, not in onion fields. However, that policy alone does not criminalize every act that leads to violence.

Our holding is consistent with the result reached by other courts. *See State v. Snodgrass*, 117 Ariz. 107, 570 P.2d 1280 (App.1977), *on appeal from remand*, 121 Ariz. 409, 590 P.2d 948 (App.1979) (interpreting comparable Arizona statute in light of Fourth Amendment—physical act or exertion against officer required to constitute offense of resisting or obstructing); *In re V.*, 10 Cal.3d 676, 111 Cal.Rptr. 681, 517 P.2d 1145 (1974) (not a crime to nonviolently resist the unlawful action of police officers); *In re Gregory S.*, 112 Cal.App.3d 764, 169 Cal.Rptr. 540 (1980) (also construing comparable statute); *Fields v. State*, 178 Ind.App. 350, 382 N.E.2d 972 (1978) (where officer had no legal duty to remove defendant's pickup, defendant was not interfering with the execution of a legal duty and, hence, his arrest for interferring with a police officer was illegal). *See generally*, Annotation, *What Constitutes Obstructing or Resisting an Officer, in the Absence of Actual Force*, 44 A.L.R.3d 1008 (1972).

■ The evidence regarding the officer's purpose and conduct raised questions of fact about his motivation for calling the tow truck operator and for ordering Wilkerson to cease her obstruction of the tow. Whether the officer was performing "a duty of his office" turned upon a resolution by the jury of these factual matters. Wilkerson's defense also raised questions regarding whether the pickup was "in tow" when she requested its release, and whether she tendered an authorized fee. A new trial is required to resolve all of these questions of fact. As the district court ordered, in addition to those authority-limiting instructions sought by Wilkerson, the jury should be instructed regarding the scope of a police officer's duty.

Accordingly, the order of the district court, remanding this case for a new trial, is affirmed.

SWANSTROM, J., dissents without opinion.

BURNETT, Judge, specially concurring.

It may be uncivil conduct, but it is not a crime under I.C. § 18–705, to obstruct a tow truck operator. On the other hand, it may be a crime to disobey a police officer's order if such disobedience causes the officer to be obstructed in the performance of his "duty." Accordingly, the question is whether the order has been issued for the

purpose of achieving an objective within the officer's duty.

As noted in today's lead opinion, if an officer issues an order incident to a personal errand or frolic, the order clearly does not serve the purpose of achieving an objective within the officer's duty. Disobedience to such an order would not violate I.C. § 18–705. In the present case, however, there is no serious contention that the sheriff's deputy was engaged in a personal activity. He was engaged in an official activity. Nevertheless, there are disputes as to whether the official activity constituted a "duty" and whether the activity was pursued in a lawful manner. The lead opinion deals extensively with the second issue. It discusses the scope of I.C. § 18–705 where an officer pursues an official activity in a manner contrary to law. This approach to the case harbors a risk of confusing the existence of a duty with the correct performance of the duty. Accordingly, I write separately to enlarge our discussion of the first issue—whether the deputy's official activity constituted a "duty" under I.C. § 18–705.

The threshold inquiry is how to characterize the deputy's official activity when he intervened in Mrs. Wilkerson's dispute with the tow truck operator. The state urges, and a jury *could* find, that the deputy was engaged in the continuing investigation of an apparent violation of traffic laws. Under this view, the deputy's order to Mrs. Wilkerson was in furtherance of a law enforcement objective. Therefore, it was pursuant to a "duty" and Mrs. Wilkerson's disobedience of the order would violate I.C. § 18–705.

In contrast, Mrs. Wilkerson has argued, and a jury *could* find, that the pickup played no part in any ongoing investigation. The deputy himself testified at trial that he requested a towing service for the purpose of minimizing telephone calls by curious citizens. The deputy did not assert that the pickup was evidence or that it was needed for any other law enforcement purpose. Indeed, the pickup eventually was towed, not to the sheriff's impound yard, but to the towing company's private lot. If

a jury accepted Mrs. Wilkerson's view of the deputy's activity, then the question would be whether the concept of "duty" under I.C. § 18–705 is broader than law enforcement.

By custom and tradition, officers not only enforce the law but also engage in a variety of community service functions. These range from the rescue of stranded cats to the informal resolution of neighborhood disputes. In the present case, if towing the pickup served no law enforcement purpose, the deputy's action in summoning a tow truck could be characterized as a community service—ridding the community of a nuisance created by a vehicle overturned in an onion field. But if the deputy's action were so characterized, then it should have been a matter of indifference to him whether the pickup actually was towed by the operator he summoned or was removed by someone else at Mrs. Wilkerson's request. And if it made no difference to the officer's purpose how the pickup was removed, then it was unnecessary for him to intervene in the ensuing dispute between Mrs. Wilkerson and the tow truck operator. Nevertheless, the fact is that the deputy chose to intervene. If his decision to do so were viewed as an extension of a community service, then noncompliance with his order could be regarded as an obstruction to his performance of a broadly characterized "duty" under I.C. § 18–705.

However, the judiciary should not ascribe to a criminal statute an abstract meaning broader than that probably intended by the Legislature. Did our Legislature intend to criminalize noncompliance with an *order* issued by an officer performing a community service? There is no self-evident answer. However, I submit that the answer is "yes" —subject to an exception for passive noncooperation. I have no doubt that the Legislature, when enacting I.C. § 18–705, intended to prohibit a citizen from threatening or physically obstructing an officer engaged in a community service. But where the service consists of intervening in a dispute between two individuals, and the alleged obstruction consists simply of refusal to act in conformity with the officer's judgment on the merits of the dispute, I doubt

that our Legislature intended the conduct to be punished as a crime. As noted in the lead opinion, statutes in other jurisdictions generally have been construed not to impose criminal penalties for such conduct.

Thus, my approach to this case leads to virtually the same conclusion reached by the lead opinion. Mrs. Wilkerson is entitled to a new trial, with appropriate jury instructions on the scope of "duty" under I.C. § 18–705. This conclusion reflects a prudent caution about construing the statute so broadly that it would criminalize a citizen's noncooperation with a police officer's decision to resolve a dispute between individuals. Such criminalization is not required by the facial language of I.C. § 18–705. Neither is it required by the public policy, articulated in *State v. Richardson*, 95 Idaho 446, 511 P.2d 263 (1973), of preventing violent confrontations between citizens and the police during arrests. As the lead opinion explains, Mrs. Wilkerson was prosecuted for her conduct *before* the arrest. Indeed, the irony of this case is that if a jury ultimately finds the deputy was engaged in resolving a dispute, then it was the deputy's use of force to implement his judgment on the dispute which produced the very kind of confrontation that *Richardson* seeks to avoid.