**Sam SCHULZ, Appellant,**

v.

**Clark County Sheriff Ralph LAMB et al., Appellees.**

No. 73–2014.

United States Court of Appeals, Ninth Circuit.

Oct. 15, 1974.

Emilie N. Wanderer, Las Vegas, Nev., for appellant.

Cromer & Barker, Las Vegas, Nev., for appellees.

## OPINION

Before HUFSTEDLER and CHOY, Circuit Judges, and McNICHOLS,* District Judge.

HUFSTEDLER, Circuit Judge:

Schulz, invoking diversity jurisdiction, sued two deputy sheriffs, a county sheriff, and a Las Vegas hotel for false arrest and imprisonment.[1] He appeals from the dismissal of his action against the county sheriff and the hotel and from judgment in favor of the deputy sheriffs entered after a nonjury trial on the merits. We affirm the dismissals because no claim for relief could be sustained against the county sheriff or the hotel. We reverse the judgment exculpating the deputy sheriffs Dessel and Levitte because the record does not sustain the district court's conclusion that they had a legally justified basis for detaining and questioning Schulz.

Schulz and his family took a holiday in Las Vegas, Nevada. As Schulz was preparing to return to Los Angeles, his mother became separated from the other members of the party during their visit to the Las Vegas International Hotel. He searched for her, first taking an elevator to the third floor, where there were public facilities, and then to a higher floor, where there was a lounge. He took an elevator back to the first floor when he did not find her at those two locations.

When Schulz got off the elevator, Dessel and his partner Levitte were standing in the lobby. Dessel testified that there had been a high burglary rate in Las Vegas hotels, and that he and his partner had been assigned to certain hotels with instructions "to roam the rooming areas and stop anyone that looked suspicious, that was loitering about the rooming areas." Dessel recognized Schulz as a person he had seen leaving the rooming area of another hotel earlier that same day, although he could not recall which hotel it was. According to Dessel, Schulz walked away from the elevator very quickly and appeared to be nervous. Dessel, who had not been suspicious of Schulz when he observed him before, became suspicious upon seeing Schulz apparently emerging from the rooming area of a second hotel.

Dessel caught up with Schulz, showed Schulz his identification, and asked him if he was a guest at the hotel. Schulz said "No." Dessel then asked Schulz for identification; Schulz told Dessel his name. When Dessel asked Schulz why he had been coming out of the room-

---

* Honorable Ray McNichols, Chief Judge, Boise, Idaho, sitting by assignment.

1. There has been some confusion in this case as to whether Schulz sued under the Civil Rights Act (42 U.S.C. § 1983; 28 U.S.C. § 1343). The first mention of the Civil Rights Act was at trial, when during a discussion the judge stated: "I'm talking about the Civil Rights Act, and that is what you are suing under, you are not suing under a statute in Nevada, you are suing under the Civil Rights Act." The judge's comments to the contrary notwithstanding, Schulz' original complaint, his amended complaint, and the pretrial order all specified diversity of citizenship with the requisite amount in controversy as the basis for federal jurisdiction. Schulz did not attempt to allege a civil rights action. Accordingly, we treat the case as an ordinary diversity action founded on the Nevada law of false arrest and false imprisonment.

ing area of another hotel earlier in the day, Schulz replied, "This is ridiculous; I'm not answering any more questions," and walked away.

Dessel told Schulz to stop, but Schulz kept on walking. Dessel caught up with Schulz and advised him that he was under arrest for prowling. At trial, Dessel testified that he arrested Schulz because he was walking away and did not respond to further questions. Dessel said he attempted to handcuff Schulz who became "combative," and Levitte had to assist Dessel. The two deputies took Schulz directly to jail. He was released six hours later after his parents supported his innocence.

■ Nothing in the record indicates that the hotel employed the deputy sheriffs or had any connection with their activities in the hotel. The action against the hotel was properly dismissed.

■ Liability of the county sheriff was predicated on *respondeat superior*. The action against the sheriff was also correctly dismissed because Nevada law relieves a sheriff of vicarious liability based on an act or omission of one of his deputies. (Nev.Rev.Stat. § 41.0335 (1)(a).)

■ If the deputies had probable cause to arrest Schulz when he stepped off the elevator, or if probable cause developed after he had been justifiably stopped for interrogation, the deputies had a good defense against the action under Nevada law. (*E. g.,* Marschall v. City of Carson (1970) 86 Nev. 107, 464 P.2d 494.) When Schulz emerged from the elevator, there was nothing to indicate that any crime had been committed or that Schulz was in any way connected with a crime. Dessel was justified in stopping and interrogating Schulz only if he had a "founded suspicion" that criminal activity was afoot. (*E. g.,* United States v. Ward (9th Cir. en banc 1973) 488 F.2d 162, 169; United States v. Scheiblauer (9th Cir. 1973) 472 F.2d 297, 300; United States v. Jennings (9th Cir. 1972) 468 F.2d 111, 115 ) To sus-

tain founded suspicion, the deputies must be able to point to specific and articulable facts and to rational inferences they drew therefrom which created the suspicion and led to the detention (Terry v. Ohio (1968) 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889).

■ At trial Dessel tried to isolate the factors that made him suspicious of Schulz: (1) there was a high burglary rate in the hotels at Las Vegas; (2) he had earlier seen Schulz emerging from the rooming area of another hotel; and (3) Schulz appeared to be nervous and was walking rather quickly. We cannot agree that these relatively innocuous factors generated any "founded" suspicion. Individually and together the factors articulated by Dessel are too insignificant to justify an investigative detention.

■ The existence of a high burglary rate in the hotels at Las Vegas is beside the point. Dessel and Levitte had no reason to believe that a particular crime might be afoot, much less that Schulz might be involved. A high rate of burglary in Las Vegas hotels is not surprising and may call for vigilant surveillance, but it cannot justify a relaxed application of the Fourth Amendment in and around the casinos.

Nor is it significant that Dessel had earlier seen Schulz emerging from the rooming area of another hotel. A great deal of traffic among the various hotels is commonplace and encouraged by the major hotels seeking customers for their gambling casinos and entertainment attractions. No cause for suspicion arises from a man's being in two or more hotels in the same day, whether he is courting lady luck or visiting a friend.

That Schulz appeared nervous and was walking rapidly is also insignificant. Many totally innocent people have nervous symptoms and walk briskly. We are aware of no studies correlating these traits with criminal propensity. Neither nervousness nor agility is a cause for suspicion, much less investigative de-

tention, in the atmosphere of Las Vegas, a community that thrives on gambling and other stimulants.

Affirmed in part, reversed in part, and remanded.