591 F.2d 1268
 Sam SCHULZ, Plaintiff-Appellant,
v.
Clark County Sheriff Ralph LAMB, Deputy Sheriff Alfred
Levitte, and Deputy Sheriff Gene Dessel, John Does
I, II, III, IV and V, and Las Vegas
International Hotel, Inc.,
Defendants-Appellees.
 No. 76-1147.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 20, 1978.
 
 Emilie N. Wanderer (argued), Las Vegas, Nev., for plaintiff-appellant.
 Corby D. Arnold (argued), Las Vegas, Nev., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before SMITH,* DUNIWAY and WALLACE, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the District of Nevada, Roger D. Foley, Chief Judge, in an action for false arrest and false imprisonment granting judgment against defendant Dessel for damages in the amount of $1.00 and dismissing the action as to defendant Levitte. The court also denied plaintiff's post-trial motions for allowance of attorney's fees and for re-taxation and resettlement of costs. We reverse the judgment as to Levitte, affirm the finding of liability as to Dessel, vacate the judgment for damages, reverse the denial of the motions for allowance of attorney's fees and for re-taxation of costs, and remand for further proceedings not inconsistent with this opinion.
 
 
 2
 Sam Schulz, a resident of California, initiated this action[1] on October 4, 1971 against deputy sheriffs Gene Dessel and Al Levitte, residents of Nevada, claiming false arrest and imprisonment. On July 5, 1970 Schulz was stopped, questioned and arrested in the lobby of the International Hotel at Las Vegas,[2] taken to the lockup and held some four-and-one-half to six hours.
 
 
 3
 Judgment was entered by the district court in favor of Dessel and Levitte. On appeal we reversed and remanded, holding that the deputies were not justified in detaining and arresting Schulz. Schulz v. Lamb, 504 F.2d 1009 (9th Cir. 1974).
 
 
 4
 On remand, a further trial was held by the district court at which the record was supplemented by the introduction of additional evidence including proof presented by Schulz to support the claimed amount of damages. The court filed a memorandum opinion holding only Dessel liable for the unlawful detention and Schulz entitled to damages in the amount of $1.00 and costs of that litigation. No findings were made with regard to the adequacy of the proof presented to support the claimed amount of damages. Judgment was entered on November 24, 1975.
 
 
 5
 On December 2, 1975 Schulz moved for attorney's fees. On December 3, 1975 Schulz filed an application for costs as required by Local Rule 20, Rules of Practice for the United States District Court, District of Nevada.[3] On December 11, 1975 a hearing was held on Schulz's application. The clerk of the court disallowed certain costs. According to Schulz, these expenses were disallowed because receipts for them were not presented. Schulz also asserts that the clerk allowed him to supplement his application with a notice of re-settlement supported by receipts. On December 15, 1975 Schulz moved to re-tax and re-settle costs. The district court denied Schulz's motions.
 
 
 6
 Schulz appealed and we assumed jurisdiction under 28 U.S.C. § 1291.
 
 
 7
 In our first opinion in this case we reversed a judgment in favor of Dessel and Levitte, holding that "the record (did) not sustain the district court's conclusion that they had a legally justified basis for detaining and questioning Schulz." Schulz v. Lamb, 504 F.2d 1009, 1010 (9th Cir. 1974). Addressed as it was only to justification for the detention, this holding left open other factual and legal issues of liability. Recognizing this, the district court on remand found Levitte not liable because he "simply assisted his partner in subduing an uncooperative man who had been stopped and arrested by Dessel."
 
 
 8
 Apparently there exists no Nevada precedent directly on the question whether one in Levitte's position can be held liable for participating in an unlawful detention commenced by another. Thus we are bound, as was the district court, to attempt to resolve this issue as would the Supreme Court of Nevada on the same facts. We are further bound, under our decisions, to give great weight to the finding of the district judge, in light of the fact that he sits in Nevada and has ruled under what he perceived to be Nevada law. Because of the district judge's presumed expertise in local law, his finding should be accepted on review unless clearly wrong. United States v. Pollard, 524 F.2d 808, 810 (9th Cir. 1975); Owens v. White, 380 F.2d 310, 315 (9th Cir. 1967).
 
 
 9
 Other jurisdictions take a view contrary to that taken in this case by the district court.
 
 
 10
 If an arrest by a constable is in its inception wrongful, all other constables who act and assist in the continuance of the wrongful imprisonment are responsible for the entire damage thereby caused to the plaintiff, although they had no knowledge of the unlawfulness of the imprisonment and intended to act in the strict discharge of their official duties. (Cook v. Hastings, 150 Mich. 289, 291, 114 N.W. 71, 72 (1907), Quoting 12 Am. & Eng.Enc.Law (2d ed.) 777).
 
 
 11
 Delude v. Raasakka, 42 Mich.App. 665, 671, 202 N.W.2d 508, 511 (1972), Rev'd on other grounds, 391 Mich. 296, 215 N.W.2d 685 (1974); See also Howard v. Burton, 338 Mich. 178, 61 N.W.2d 77 (1953); Wood v. Hacker, 23 Ala.App. 12, 15, 121 So. 437, 439, Cert. denied, 219 Ala. 139, 121 So. 441 (1929). That alone does not establish that the finding was clearly wrong. However, it appears that this rule, which imposes liability upon a participant such as Levitte, is the virtually unanimous rule in American jurisdictions. It is the rule recognized without citation of contrary authority by the Restatement (Second) of Torts § 45A, and comment e (1965), and Prosser, Handbook of the Law of Torts 47 (4th ed. 1971). See also 32 Am.Jur.2d False Imprisonment § 32 (1967); 35 C.J.S. False Imprisonment § 37 (1960). In a recent opinion, Marschall v. City of Carson, 86 Nev. 107, 110, 464 P.2d 494, 497 (1970), the Nevada court stated the general doctrine of false imprisonment in terms fully as broad as the Restatement and other jurisdictions. In addition, an early Nevada case, Strozzi v. Wines, 24 Nev. 389, 398, 57 P. 832 (1899), recognized in general the liability of all participants in unlawful arrests. In view of this authority, we are persuaded that the district court was clearly wrong in holding, in effect, that the Nevada court would adopt an aberrant rule limiting the liability of persons participating in unlawful detentions.
 
 
 12
 The award of token damages of only $1.00 was also in error. Arrest, handcuffing, transportation to jail, processing and incarceration for some four-and-one-half hours in a lockup call for some compensation for embarrassment, humiliation and inconvenience to a 27-year-old college graduate never before arrested, even if testimony as to long-lasting mental effects be entirely discounted. Lerner Shops of Nevada, Inc. v. Marin, 83 Nev. 75, 79, 423 P.2d 398, 401 (1967), states the Nevada rule for damages in actions for false imprisonment:
 
 
 13
 A successful plaintiff is entitled to compensation for all the natural and probable consequences of the wrong, including injury to the feelings from humiliation, indignity and disgrace to the person, and physical suffering.
 
 
 14
 In general, the measure of damages for false imprisonment is such a sum as will fairly and reasonably compensate the injured person for the injuries caused by defendant's wrongful act. In some circumstances, however, courts have held that a plaintiff's conduct may be considered in mitigation of damages. Petit v. Colmery, 20 Del. (4 Penne.) 266, 272, 55 A. 344, 346 (Del.Super.Ct.1903); Palmer v. Maine Central R. R., 92 Me. 399, 412, 42 A. 800, 804 (1899); McCall v. McDowell, 15 Fed.Cas. 1235, 1239 (U.S.Cir.Ct.D.Cal.1867); Botts v. Williams, 56 Ky. (17 B.Mon.) 687, 697 (1856); Beckwith v. Bean, 98 U.S. 266, 278, 25 L.Ed. 124 (1878). See generally 32 Am.Jur.2d False Imprisonment § 104 (1967).
 
 
 15
 The district court held that "(t)he only aspect of this case for which plaintiff's damages were not caused by his own action was the period of time between the initial stop by Dessel and the response of Schulz that he need not answer questions" and that "any injuries which plaintiff has suffered were the result of his own uncooperativeness." We disagree. When stopped and questioned by Dessel, Schulz identified himself and explained his presence in the hotel. Deputy Dessel knew, or should have known, that Schulz was obliged to do no more.[4] Under these circumstances, nothing in Schulz's conduct can reasonably be said to have provoked the arrest. We cannot agree, therefore, with the court's conclusion that damages must be limited to the period before Schulz's response that he need not answer questions. The amount of damages should be recomputed to include damages for the entire period of detention.
 
 
 16
 The district court denied Schulz's motion for allowance of attorney's fees because the federal statutory definition of "costs," 28 U.S.C. § 1923(a), does not include attorney's fees. Federal courts, however, are required to apply state law in diversity actions with regard to the allowance or disallowance of attorney's fees. Michael-Regan Co. v. Lindell,527 F.2d 653, 656 (9th Cir. 1975). Where state statutes allow the prevailing party attorney's fees, they may be recovered, People of Sioux County v. National Surety Co., 276 U.S. 238, 243-44, 48 S.Ct. 239, 72 L.Ed. 547 (1928), and the Nevada statutes do provide for the discretionary award of attorney's fees to the prevailing plaintiff under certain conditions, N.R.S. Title 2, ch. 18, § 18.010(2)(a) (1977). The court erroneously concluded that it had no discretion to award attorney's fees. Since the award of attorney's fees is in the first instance a matter for the district court in its discretion, we express no opinion at this time as to whether an award in the instant case would be proper.
 
 
 17
 The district court also denied Schulz's motion for re-taxation and re-settlement of costs. This court had taxed no costs to either party on the first appeal. Costs in the district court, except for attorney's fees were allowed by the clerk on December 11, 1975 where the clerk considered them properly substantiated. The motion to re-tax appears to have been properly and timely filed on December 15, 1975. The motion for attorney's fees having been denied for lack of power, should be considered anew. The motion to re-tax costs should also be considered anew.
 
 
 18
 Judgment reversed in part, vacated in part, and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 This case is in the federal courts under our diversity jurisdiction and we apply Nevada law
 
 
 [2]
 At trial deputy Dessel testified, in part, as follows:
 A. After pursuing him, I finally caught up with him in the lobby of the hotel. I produced identification showing myself to be a deputy sheriff, and asked him if he was a guest of the hotel, to which he replied that he was not. I then asked him for identification, and he identified himself verbally. I asked him why he had been coming out of another rooming area in another hotel, and at this point he stated, "This is ridiculous, I'm not answering any more questions," and turned and just walked away.
 Q. And at that point what did you do?
 A. I yelled for him to stop, and he kept walking, so I caught up with him and put my hand on his shoulder and advised him that he was under arrest for prowling.
 Q. And did you attempt to handcuff him at that time?
 A. Yes, I did, but he was very combative. At this time my partner came up and saw that I was having a hard time with him, and assisted me in handcuffing him.
 Deputy Dessel's story was corroborated by deputy Levitte who testified at trial, in part, as follows:
 A. After Gene left my company he caught up with the guy and started to talk to him, and then I noticed that the guy walked off, and Gene turned and caught up with him again, and that is when I went over and assisted Gene to put the handcuffs on him.
 The district court credited the testimony of the deputies.
 A report filed by Dessel and Levitte shortly after Schulz was booked sheds additional light on the arrest. It states, in part:
 At this time O/R's questioned the subject as to what he was doing in the rooming area of the International Hotel, to which he related that he was looking for his mother, as she was lost. O/R's in an attempt to further question the subject as to where he was staying and what he was doing in the hotel (asked additional questions) at which time the subject became very abusive and would not answer any of the questions as to his being in the rooming area of the International Hotel.
 
 
 [3]
 Local Rule 20 provides:
 (a) Application to the Clerk. Within 10 days after notice of the entry of a judgment allowing costs, the prevailing party shall serve on the attorney for the adverse party and file with the clerk an application for the taxation of costs. The application shall contain an itemized schedule of the costs and a statement signed by the attorney for the applicant that the schedule is correct and that the costs were necessarily incurred. The application shall be heard by the clerk not less than 5, nor more than 10, days after it is served, and notice of the time of hearing shall be endorsed upon it.
 Upon failure to comply with this rule, all costs, other than the clerk's costs, which may be inserted in the judgment without application, shall be waived.
 (b) Objections. Upon the hearing, specific written objections, supported by affidavits or other written evidence, may be made to any item of costs. The clerk shall thereupon tax the costs, and if there is no appeal, shall insert the amount of costs taxed in the blank left in the judgment, and also in the docket.
 (c) Review. A dissatisfied party may appeal upon written motion served within 5 days of the clerk's decision, as provided in Rule 54(d), FRCP. Appeals shall be heard upon the same papers and evidence submitted to the clerk.
 
 
 [4]
 Even under present Nevada stop and frisk law, N.R.S. Title 14, ch. 171, § 171.123(2) (1975):
 The officer may detain such person only to ascertain the identity of such person and the suspicious circumstances surrounding his presence abroad. Any person so detained shall identify himself, but may not be compelled to answer any other inquiry of any peace officer.