511 P.2d 263

**STATE of Idaho, Plaintiff-Respondent,**

v.

**John H. RICHARDSON, Defendant-Appellant.**

**No. 11085.**

Supreme Court of Idaho.

June 8, 1973.

Rehearing Denied July 5, 1973.

Theodore V. Behm, Edgar R. Frachiseur, Buhl, for defendant-appellant.

W. Anthony Park, Atty. Gen., J. Dennis Williams, Deputy Atty. Gen., James G. Reid, Asst. Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

At approximately midnight, August 28, 1971, a disturbance occurred in the Depot Grill in Twin Falls, Idaho, at a table where John H. Richardson, defendant-appellant herein, his ex-wife, Penny Richardson, and her sister were seated. The disturbance was caused by appellant's ex-wife, Penny, speaking in loud and profane language. The record is clear that appellant did not participate in the disturbance inside the restaurant but attempted to calm and quiet his ex-wife.

A waitress requested two policemen seated at the counter to remove the parties from the restaurant because the loud and profane language used by appellant's ex-wife might offend customers. The police officers escorted appellant and the two women from the restaurant where a discussion took place in front of the building. Up to this point witnesses testified that appellant had not caused any disturbance.

Once outside the restaurant, the two women told the police officers that they would leave but did not want appellant to go with them. One of the officers, speaking to appellant, said, "Johnny, leave them alone." The police officer, over objections of defense counsel, testified that appellant then replied with threatening gestures and foul language. (Rptr. Tr. p. 24A). The police officers informed appellant that he was under arrest for disorderly conduct and as they attempted to take him into custody an altercation broke out. In the course of the ensuing fight, one of the police officers was kicked in the mouth and appellant ripped one officer's pistol from the holster and fired it in the air. The officers finally subdued Richardson by spraying Mace, a chemical similar to teargas, in his face. Witnesses testified that appellant continually made threats and used foul language at the time of incident and even during the booking procedure at the police station. Appellant Richardson denied that he used threatening or foul language at any time and claimed that he had been hit repeatedly by the arresting officers. The police officers testified that Richardson had been hit only once.

A criminal complaint was filed against Richardson charging him with the felony of resisting a police officer by means of violence. Following a preliminary hearing Richardson was bound over to the district court and a trial date of February 2, 1972, was set.

On January 28, 1972, Richardson moved for a continuance on the ground that a material witness, Richardson's ex-wife, Penny Richardson, who was present at the scene of the alleged crime, was in the hospital and could not appear at the trial. The motion for continuance was denied. However, Penny Richardson's earlier testimony from the preliminary hearing was read to the jury. On February 3, 1972, the jury returned a verdict of guilty on the charge of resisting a law enforcement officer by means of violence.

On February 14, 1972, appellant made a motion for a new trial alleging two main grounds; first, that the court committed error in permitting the police officers to testify regarding specific profane language which he allegedly used, and secondly that

the trial court failed to give a requested instruction. The motion for new trial was denied and the trial court, on February 25, 1972, entered a judgment of conviction, and appellant Richardson was sentenced to the Idaho State Board of Corrections for a term not to exceed five years. The court retained jurisdiction of the defendant and the sentence for 120 days. On February 25, 1972, Richardson appealed to this Court.

In his first assignment of error appellant contends that the trial court erred in refusing to grant a continuance to the defense until a material witness was released from the hospital. In Pauley v. Salmon River Lumber Co., Inc., 74 Idaho 483, 264 P.2d 466 (1953), this Court set forth the test to be applied when considering a motion for continuance. The Court in *Pauley* said:

"From the foregoing cases it appears that if the showing made upon an application for a continuance upon the ground of the absence of a material witness, is made in good faith, shows that reasonable diligence has been exercised to obtain the presence of the witness, shows substantially to what the witness would testify and that such testimony is material, and shows a sufficient reason for the absence of the witness by the affidavit of an affiant in position to know the facts, then it is an abuse of discretion for the trial court to refuse to grant a continuance. Of course, if the adverse party admit that such evidence would be given, and that it be considered as actually given on the trial, or offered and overruled as improper, the trial must not be postponed." 74 Idaho at 490, 264 P. 2d at 470.

■ It is well settled in this, and the overwhelming majority of other jurisdictions, that the granting of a motion for continuance is vested in the sound discretion of the trial court, and the action of that court will not be disturbed unless there has been a clear abuse of discretion. Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); State v. Laws,

94 Idaho 200, 485 P.2d 144 (1971); State v. Bullis, 93 Idaho 749, 472 P.2d 315 (1970); State v. Polson, 92 Idaho 615, 448 P.2d 229 (1968). I.C. § 19–1909. In state v. Laws, *supra*, this Court said:

"Generally it is held that unless an appellant shows that his substantial rights have been prejudiced by reason of a denial of his motion for continuance, appellate courts can only conclude that there was no abuse of discretion. (Omitting citations)." 94 Idaho at 202, 485 P.2d at 146.

In Ungar v. Sarafite, *supra*, the Supreme Court of the United States held:

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. (Omitting citations). Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. (Omitting citations). There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (Omitting citations)." 84 S.Ct. at 849, 850 (1964).

■ We cannot say as a matter of law that the trial court infringed on appellant's substantial rights or that it abused the discretion vested in that court by denying appellant's motion for continuance. The record discloses that Mrs. Richardson's testimony from the preliminary hearing was read in full to the jury. Mrs. Richardson testified at the preliminary hearing that appellant was a gentleman and created no disturbance while inside the restaurant, that she did not see the start of the altercation once the parties were outside the building, that she never did observe appellant being boisterous, loud or making any

threats to the police officers, that she did not hear appellant use any profane language, but that she did see appellant pull the gun and fire it in the air.

Even though Mrs. Richardson's testimony may have been more impressive had she testified in person, the trial court in its discretion denied appellant's motion for continuance and ordered her prior testimony of the events in question read to the jury. In so ruling we cannot say as a matter of law that the trial court abused its discretion. Therefore the order denying appellant's motion for continuance is affirmed. Ungar v. Sarafite, *supra*; State v. Laws, *supra*; State v. Bullis, *supra*.

 Appellant's second assignment of error alleges that the trial court erred in permitting specific words of profanity to be elicited from the arresting officers when the materiality of such specific language was far outweighed by its prejudicial effect. At the time of the alleged crime appellant was placed under arrest for violation of a Twin Falls city disorderly conduct ordinance prohibiting, in part, the use of vulgar, profane or indecent language in the presence of women or children. It is well established that public obscenity is not protected by the freedom of speech provision of the First Amendment, Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); City of Pasco v. Dixon, 81 Wash.2d 510, 503 P.2d 76 (1972), and that a community may constitutionally enact laws making it an offense to use vulgar, obscene and lewd words in public. City of Pasco v. Dixon, *supra*. It was under such a statute that appellant Richardson was initially placed under arrest.

 The state was entitled to show the circumstances which resulted in the defendant being placed under arrest for disorderly conduct and the conduct which resulted in the charge of resisting arrest. The specific profane language was relevant to prove those circumstances. Also, Richardson's plea of not guilty to the felony charge of resisting arrest with force and

violence raised the issue of his intent or state of mind at the time of the altercation with the officers. The language employed by Richardson at the time he kicked one officer in the mouth and took the gun away from the other officer and fired it into the air was relevant and material to the issue of whether or not he was resisting an arrest or, as he testified, resisting an unlawful assault by the officers. We have reviewed that testimony and are of the opinion that there was relevance in what Richardson said, as testified to by the officers, from which the jury could have inferred an intent or state of mind to resist an arrest by the officers, thus distinguishing this case from State v. Wilson, 93 Idaho 194, 457 P.2d 433 (1969), relied upon by appellant. See Bell, Handbook of Evidence for Idaho Lawyers, 2d Edition, pp. 137–141 (1972). The trial court did not abuse its discretion in permitting the officers to testify concerning the statements made by Richardson at the time of the altercation.

In his third assignment of error appellant contends that the trial court erred in refusing to give defendant's requested instruction on his right to resist an unlawful arrest, and also erred in failing to give any instruction on resistance to unlawful arrest when the court was fully aware of appellant's theory of defense.

Appellant cited Brown v. United States, 47 F.2d 681 (5th Cir. 1931), and requested the following instruction regarding forceful resistance to unlawful arrest:

"The Court further charges and instructs the jury that the officer(s) who made the arrest of this defendant had no legal right to make said arrest unless (they) knew of or had reasonable grounds to believe that the defendant was then and there, at that time and place actually committing an offense (of disorderly conduct) against the laws of (the City of Twin Falls). Therefore if you find from the evidence that said officer(s), at the time and place said arrest was made, did not know or did not have reasonable

grounds to believe that this defendant was then and there committing such an offense, said arrest was unauthorized and unlawful, and the defendant had full right to resist said officer(s) and prevent (them) from placing this defendant in unlawful custody, and for the purpose of said resistance the defendant was at liberty to use such force as was (reasonably necessary) to prevent said arrest."

At common law a person unlawfully arrested could resist such an arrest by the use of reasonable force. John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900); see also Annot., "Modern Status of Rules as to right to forcefully resist illegal Arrest, 44 A.L.R.3d 1078. Although this rule may have been appropriate at common law, a resort to violence is clearly not favored in this modern era where a defendant has the protections and benefits of liberal bonding policies, appointed counsel in the case of indigency, and the opportunity to be taken before a magistrate for immediate arraignment and preliminary hearing.

The traditional common law rule permitting forceful resistance to an unlawful arrest has been modified in many jurisdictions either by legislation or by judicial decree. In 1957 the California legislature changed the common law rule in that state by enacting the following statute:

"If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest." West's Ann.Pen.Code, § 834a.

In People v. Curtis, 70 Cal.2d 347, 74 Cal. Rptr. 713, 450 P.2d 33 (Cal.1969), the Supreme Court of California held that the above statute "prohibits forceful resistance to unlawful as well as lawful arrests." Id., 70 Cal.2d at 352, 74 Cal.Rptr. at 715, 450 P.2d at 35.

More than one state has, without legislative action, modified the traditional common law rule and has adopted the rule that a private citizen may not use force to resist a peaceful arrest by one he knows, or has good reason to believe, is an authorized peace officer performing his duties, regardless of whether the arrest is illegal under the circumstances of the occasion. In a well reasoned and enlightening opinion, Miller v. State of Alaska, 462 P.2d 421 (1969), the Supreme Court of Alaska traced the development of the common law rule and in modifying that rule stated:

"Lastly, we take up the question of whether one can resist a peaceful arrest even though the arrest is unlawful. The weight of authoritative precedent supports a right to repel an unlawful arrest with force. United States v. Di Re, 332 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948); John Bad Elk v. United States, 177 U.S. 529, 537, 20 S.Ct. 729, 44 L.Ed. 874 (1900); United States v. Heliczer, 373 F.2d 241, 248 (2d Cir. 1967), cert. den. 388 U.S. 917, 87 S.Ct. 2133, 18 L. Ed.2d 1359; 1 Wharton, Criminal Law & Procedure, Sec. 216 (1957). This was the rule at common law. It was based upon the proposition that everyone should be privileged to use reasonable force to prevent an unlawful invasion of his physical integrity and personal liberty.

"But certain imperfections in the functioning of the rule have brought about changes in some jurisdictions. A new principle of right conduct has been espoused. It is argued that if a peace officer is making an illegal arrest but is not using force, the remedy of the citizen should be that of suing the officer for false arrest, not resistance with force. The legality of a peaceful arrest may frequently be a close question. It is a question more properly determined by courts than by the participants in what may be a highly emotional situation. Because officers will normally overcome resistance with necessary force, the danger of escalating violence between the officer and the arrestee is great. What begins as an illegal misdemeanor arrest

may culminate in serious bodily harm or death.

"The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be reexamined. Along with increased sensitivity to the rights of the criminally accused there should be a corresponding awareness of our need to develop rules which facilitate decent and peaceful behavior by all.

"The common law rule was developed in a time when self-help was a more necessary remedy to resist intrusions upon one's freedom.

'[It] was developed largely during a period when most arrests were made by private citizens, when bail for felonies was usually unattainable, and when years might pass before the royal judges arrived for a jail delivery. Further, conditions in English jails were then such that a prisoner had an excellent chance of dying of disease before trial.' Warner, 'The Uniform Arrest Act,' 28 Va.L. Rev. 315 (1942).

. . . . . .

"To us the question is whether any amount of force should be permitted to be used by one unlawfully but peaceably arrested. We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders. The old common law rule has little utility to recommend it under our conditions of life today. We hold that a private citi-zen may not use force to resist peaceful arrest by one he knows or has good reason to believe is an authorized peace officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion." Id. at 426–427.

■ We are of the opinion that the trend is, and should be, away from the traditional common law rule, and therefore we hold that if a person has reasonable ground to believe he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest. As stated above in Miller v. State of Alaska, *supra*, "Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be re-examined." Id. at 426. Regardless of whether the arrest is illegal under the circumstances of the occasion, we hold that an individual may not use force to resist an arrest by one he knows or has good reason to believe is an authorized peace officer in the performance of his duties.

In the event that the arrest is unlawful, the arrested individual may seek relief under I.C. § 18–703 which provides that any public officer who arrests any person or detains one against his will without a regular process or lawful authority is guilty of a misdemeanor, or he may proceed with a civil action for false arrest under I.C. § 18–2901. See Ludwig v. Ellis, 22 Idaho 475, 126 P. 769 (1912).

■ Although a defendant is entitled to have his theory of the case presented to the jury upon proper instructions, State v. Stevens, 93 Idaho 48, 454 P.2d 945 (1969), a defendant is not entitled to an instruction on his theory of the case when that theory is not the law. In the present case the instruction requested by appellant is not the law and therefore no error was committed by failing to instruct the jury on the right to resist unlawful arrest by force. Appel-

**452**

lant's third assignment is therefore without merit.

For the reasons stated herein the judgment of conviction is affirmed.

DONALDSON, C. J., and SHEPARD, McQUADE and McFADDEN, JJ., concur.