701 P.2d 289

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Jerry PENNELL, Defendant-Appellant.**

**No. 15397.**

Court of Appeals of Idaho.

May 28, 1985.

Michael E. Powers, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and A. Rene' Fitzpatrick, Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Jerry Pennell was tried on a charge of first degree murder. The prosecutor's Information essentially alleged that the victim died as a result of torture and prolonged acts of brutality during a beating administered by Pennell. The charge was made under I.C. §§ 18–4001 and –4003.[1]

---

1. I.C. § 18–4001 provides: "Murder is the unlawful killing of a human being with malice aforethought or the intentional application of torture to a human being, which results in the death of a human being. Torture is the intentional infliction of extreme and prolonged pain with the intent to cause suffering. It shall also be torture to inflict on a human being extreme and prolonged acts of brutality irrespective of proof of intent to cause suffering. The death of a human being caused by such torture is murder irrespective of proof of specific intent to kill; torture causing death shall be deemed the equivalent of intent to kill."

The jury found Pennell guilty of a lesser offense, voluntary manslaughter. On appeal, Pennell raises a single issue for review. He contends the trial court committed error by refusing to give to the jury a requested instruction concerning excusable homicide. We hold that the court did not err in rejecting the instruction and we affirm the conviction.

The victim, a female friend of Pennell, died as a result of injuries received during an altercation with Pennell. The evidence presented at trial showed that Pennell became angry during the course of an argument with the victim at about 4:00 a.m. one morning at the victim's home. Pennell proceeded to grab the victim by the throat and strike her face with his fists, knocking her to the ground. They stopped fighting for a very short time, then began again as the argument continued. Again he hit her several times with his fists, knocking her down. He picked her up but they wrestled to the floor. On two occasions he picked her up and dropped her in a manner that caused her to strike her face on the ground. They continued to fight until she became unconscious. When Pennell could not revive her he ran next door to a neighbor's house to call for the police and an ambulance. The police received the call at approximately 5:30 a.m. Within five minutes the police and an ambulance arrived at the scene. The victim was comatose. Emergency treatment was administered and the victim was taken to a hospital. She died later that day. A doctor who performed an autopsy on the victim testified that the victim's death was caused by an acute subdural hemorrhage resulting from multiple blows to the head. Essentially, the doctor testified that a hemorrhage between the victim's skull and her brain resulted in intercranial pressure on the central nervous system functions of her brain, eventually causing cessation of respiration. The doctor also stated the victim

had suffered injuries from manual strangulation, fracture of the thyroid cartilage, a bruise to one of her kidneys, and numerous lacerations, abrasions and contusions on her face, scalp and rib cage. The doctor determined that these latter described injuries possibly contributed in varying degrees to the death but were not causative in themselves.

Pennell requested the trial court give an instruction to the jury, informing the jury of the provisions of I.C. § 18–4012. That statute provides:

Homicide is excusable in the following cases:

1. When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent.

2. When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat when no undue advantage is taken nor any dangerous weapon used, and when the killing is not done in a cruel or unusual manner.

The trial court did not give the requested instruction, noting that it was "covered."

We have closely scrutinized each of the instructions given by the trial court. Among them we find an instruction informing the jury that the charge of first degree murder is a felony. We find another instruction that an accusation charging the commission of a felony "means that the act was done without justification or excuse." We find instructions concerning the elements of the crimes of first degree murder by torture, of second degree murder, of voluntary manslaughter, and of involuntary manslaughter. The jury was instructed that before they could find the defendant guilty of one of these offenses, to the exclusion of any other, all of the elements of such an offense must be proved by the state beyond a reasonable doubt. The

I.C. § 18–4003 provides in part: "All murder which is perpetrated by means of poison, or lying in wait, or torture, when torture is inflicted with the intent to cause suffering, to execute vengeance, to extort something from the victim, or to satisfy some sadistic inclination, or which is perpetrated by any kind of wilful, deliberate and premeditated killing is murder of the first degree."

court informed the jury that manslaughter is the unlawful killing of a human being, without malice. The jury was instructed that voluntary manslaughter included a death, without malice, occurring upon a sudden quarrel or heat of passion. The jury was also instructed that involuntary manslaughter included a death, without malice, occurring as a result of the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection. However, nowhere do we find in the court's instructions that a death by accident or misfortune, occurring in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat when no undue advantage is taken nor any dangerous weapon is used, and when the killing is not done in a cruel or unusual manner, is an excusable homicide. We conclude that Pennell's requested instruction was not covered by other instructions.

This does not mean, however, that the refusal to give the instruction constituted error entitling Pennell to a new trial. Although a defendant is entitled to have the jury instructed as to his theory of the case, an instruction need not be given unless there is supportive evidence for that theory. *State v. Beason,* 95 Idaho 267, 506 P.2d 1340 (1973). Focusing on subsection 2 of I.C. § 18–4012, Pennell argues that evidence was presented at trial to show the homicide was not intentional but instead was "committed by accident and misfortune, in the heat of passion." We disagree.

The evidence here does not support, but rather dispels, the applicability of the excusable homicide law. The only "eye witness" to the incident was Pennell himself.[2] His testimony establishes that the affray occurred as a result of his anger. The testimony does not tend to show a lawful act done by lawful means with usual and ordinary caution. I.C. § 18–4012(1). Nor does it tend to show a sudden and sufficient provocation for striking the victim with his fists. I.C. § 18–4012(2). Al-

though Pennell may have not intended to kill the victim, his intentional, continuous striking of her with his fists was not by "accident or misfortune." I.C. § 18–4012(2). From our review of the evidence we conclude that it was not error for the court to fail to give the excusable homicide instruction requested by Pennell.

The judgment of conviction for voluntary manslaughter is affirmed.

BURNETT and SWANSTROM, JJ., concur.

---

2. The victim's two children, ages three and five years old, apparently were present in the house but asleep during the incident. Neither was called to testify at trial.