736 P.2d 1327

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert JOHNS, Defendant-Appellant.**

No. 16251.

Supreme Court of Idaho.

April 29, 1987.

Alan E. Trimming, Ada County Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and David R. Minert, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BAKES, Justice.

On March 3, 1985, a body was discovered at Initial Point outside of Kuna, a small rural town in southwestern Idaho. From the condition of the corpse and the presence of fresh blood at the site, police investigators determined that the victim's death had probably just taken place. It was first believed that the victim had been stabbed to death, but sometime later it was determined that a small caliber gun shot had caused the fatal wound. Deputy Mike Lakey arrived at Initial Point and participated in the crime investigation. Upon viewing the body, Lakey tentatively identified the victim to be Don Price whom he knew to have had some problems with the defendant, Robert Johns.

After the tentative identification of the victim as Don Price, Deputy Hamilton was dispatched to Price's residence where he encountered Johns inside Price's apartment.[1] After a brief conversation with a visibly nervous Johns, Hamilton left the apartment. However, he was instructed by radio to take up surveillance of the apartment from a distance. While there, he saw Johns go back and forth from Price's apartment to an adjoining apartment belonging to Johns' girlfriend Julie Halverson. On one such trip, the officer saw Johns remove a large knife from a pickup truck and take it into Halverson's apartment. Hamilton observed the apartment scene until Johns and Halverson attempted to leave the area in a blue pickup truck. Hamilton was instructed by radio to stop Johns and detain him until the detectives arrived.

Hamilton stopped the truck, frisked Johns, handcuffed him and placed him in the back of his patrol car. Johns was not yet formally placed under arrest, and he was not told why he was detained. At this point the deputy observed, in plain view, in the back of Johns' pickup a large amount of fresh blood, as well as a cap which the deputy recognized as that of the victim. Johns was then transported to the police station. Halverson and her daughter were

---

1. Officer Hamilton testified that when he arrived at Price's apartment he knocked on the east side door, "I heard some movement around inside and I assumed somebody was inside...." After Officer Hamilton knocked, the movement inside stopped. Hamilton knocked three or four more times and received no response. He then went to the west side door and started knocking. Hamilton attempted to open the door with a key he had received from Mr. Gearhard (the man who had discovered Price's body). At this point the door pushed open. Although the key did not fit the lock, the door partially opened, allowing Hamilton to see down the hallway. Thirty seconds later, Hamilton saw Robert Johns poke his head around a corner, and Hamilton asked him to come outside to talk. Johns stepped outside—he told Hamilton his name and stated that he had no identification. Johns went on to state he was watching the apartment for Price and he didn't know where Price was or when he would be back. Hamilton also testified that during the questioning Johns "got a little bit shaken up with that, he turned pale, his fingers started trembling and so forth...."

also taken to the police station although they were not placed in custody.

Johns was *Mirandized* at the police station, and extensive interviews ensued. During the course of the interviews, Johns eventually admitted to having killed Don Price. After the interrogation, Johns was charged with first degree murder, robbery, and the use of a firearm on both charges. On April 11, 1985, a preliminary hearing was held and Johns was held to answer on all counts.

Johns filed two motions to suppress his confession. The first motion to suppress alleged that his statements were induced or coerced by threats of prosecuting Halverson or promises that no charges would be filed against her. The second motion to suppress alleged that the confession was gained through an unlawful detention. Johns also filed motions to preclude "death qualifying" the jury and requesting individual sequestered *voir dire* of potential jurors. Additionally, Johns submitted proposed instructions, including a specific defendant's theory of the case instruction. All four motions were denied by the district court.

Jury trial commenced on August 20, 1985, and concluded on August 28, 1985. The jury returned guilty verdicts on all charges. Johns was sentenced to an indeterminate life term for the murder plus an indeterminate five-year consecutive sentence for use of a firearm, and a ten-year fixed sentence for the robbery plus a five-year consecutive sentence for the use of a firearm. Johns has raised seven issues on appeal. We affirm the judgment.

## I

In his first issue raised on appeal Johns contends that the original arrest and detention of the defendant constituted an illegal arrest, rendering all subsequent statements made by him illegally obtained and therefore inadmissible. The facts show that Officer Hamilton stopped Johns as he drove away from the victim's apartment. After asking Johns to get out of the truck, he frisked Johns and removed a knife which he found on him. Then Johns was handcuffed and placed in the patrol car. Officer Hamilton testified that he had handcuffed Johns because Johns appeared to be quite nervous, and Hamilton was concerned for his own safety because Johns was a suspect in what Hamilton thought was a knife killing of Price and the fact that Johns was armed with a knife. However, Johns was not formally placed under arrest at this time.

Johns contends that this detention was an illegal seizure and not an investigatory stop. Although arguably Officer Hamilton had sufficient probable cause at the time he stopped Johns to make a valid arrest, he unequivocally testified that Johns was stopped for investigation of Price's murder and that Johns was not under arrest when he was handcuffed. There is no question but that Officer Hamilton had sufficient reasonable suspicion to effect a *"Terry"* investigative stop of Johns, given the fact of Price's killing and Officer Hamilton's observing Johns in Price's apartment and later observing him remove a knife from his pickup. The issue, therefore, is whether the handcuffing of Johns negated the legality of Officer Hamilton's investigatory stop.

The United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), acknowledged the right of police to stop and question a suspect absent sufficient probable cause to make an arrest:

"Each case of this sort will, of course, have to be decided on its own facts. We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others near to conduct a carefully limited search of the outer

clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U.S. at 30, 88 S.Ct. at 1884–85.

The *Terry* rationale has been adopted in Idaho. *See State v. Cook*, 106 Idaho 209, 677 P.2d 522 (1984). Under *Terry* and under Idaho law, limited stops can be made for investigative purposes and to enhance the safety of the police officer who is conducting an investigation. If the officer's suspicions are confirmed or further aroused, the stop may be prolonged and the scope of the investigative stop enlarged. *See State v. Burgess*, 104 Idaho 559, 661 P.2d 344 (Ct.App.1983). The standard of proof which a state must satisfy in order to justify an investigatory stop is to be judged by a "totality of the circumstances." *State v. Haworth*, 106 Idaho 405, 679 P.2d 1123 (1984). *See United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Cowen*, 104 Idaho 649, 662 P.2d 230 (1983); *State v. Post*, 98 Idaho 834, 573 P.2d 153 (1978). Under the circumstances of this case, it is clear that the trial court did not err in concluding that, based on a totality of the circumstances, the police had sufficient probable suspicion to conduct a *Terry* stop of Johns.

■ Officer Hamilton's *Terry* stop of Johns was based on personal observations of suspicious activity at a murder victim's apartment. Officer Hamilton had sufficient information to provide him with the required reasonable suspicion to make a *Terry* stop. This information included the following facts. (1) The preliminary investigation had already linked Johns with the victim based on the knowledge of Officers Hamilton and Lakey;[2] (2) when Officer Hamilton arrived at the victim's apartment he found Johns inside; and (3) during Officer Hamilton's surveillance of the apartment scene he observed Johns moving objects in and out of Price's and Halverson's apartments and his pickup truck. The objects being moved by Johns included a large knife, and at the time of the *Terry*

stop the investigators still believed that the victim had been murdered with a knife.

■ Having determined that the trial court did not err in concluding that Officer Hamilton was justified in making a *Terry* stop, we must now determine whether the legality of that stop was negated by the subsequent handcuffing of Johns. Officer Hamilton was alone when he stopped a suspected murderer who, it was believed, had killed his victim with a knife. He had earlier observed the suspect remove one knife from the vehicle and when stopped Officer Hamilton found a second knife on the person of the suspect. When Officer Hamilton attempted to remove the knife from Johns, there was some slight resistance. Officer Hamilton testified that Johns was visibly nervous and had lost the color in his face during the stop. Further, Officer Hamilton testified that he was nervous and apprehensive about his own safety. Based on a "totality of the circumstances," we hold that it was entirely reasonable for Officer Hamilton to handcuff Johns for his own safety without negating the legality of the *Terry* stop.

■ Once Officer Hamilton made a valid *Terry* stop of Johns, he was entitled "to maintain the *status quo* momentarily while obtaining more information." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). In *Terry*, the United States Supreme Court addressed the investigating officer's prerogatives when making a *Terry* stop. The Court stated:

"[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief

2. The testimony indicated that the investigating officers were aware that three weeks previous to Price's death Robert Johns had severely beaten

the deceased and made allegations that Price was having relations with Johns' girlfriend.

that his safety or that of the others was in danger. [Citations omitted.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicions or 'hunch,' but to specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Cf. Brinegar v. United States,* [338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ]." *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883.

As explained above, Officer Hamilton had more than sufficient suspicion to stop Johns and we feel also, based on the "totality of the circumstances" test, he was "entitled to draw from the facts in light of his experience" that "his safety ... was in danger." "In maintaining the *status quo* he [Officer Hamilton] was entitled to use reasonable force. We think ... handcuffing ... was reasonable, as a corollary of the lawful [*Terry* ] stop." *United States v. Purry,* 545 F.2d 217, 220 (1976), *see Terry v. Ohio, supra.*

> "Handcuffing of a suspect does not necessarily dictate a finding of custody. (Citations omitted.) Strong but reasonable measures to insure the safety of the officers or the public can be taken without necessarily compelling a finding that the suspect was in custody." *United States v. Booth,* 669 F.2d 1231, 1236 (9th Cir. 1981).

*See State v. Taras,* 504 P.2d 548 (Ariz.App. 1972). Under the facts of this case the use of handcuffs was a reasonable precaution for the officer's safety. Within moments after handcuffing Johns, the victim's blood-soaked cap was observed by Officer Hamilton in plain view in the back of the pickup truck. If not before, at this time the officer then had sufficient probable cause to make a warrantless legal arrest.

This was a quintessential *"Terry stop."* The intrusion was minimal, and it was immediately followed by the discovery of facts sufficient to give probable cause to make a legal arrest. All of the statements which Johns sought to suppress came long after Officer Hamilton had both probable cause and exigent reasons for formally arresting Johns. Accordingly, there was no fourth amendment violation, and the district court did not err on the issue of the legality of Johns' arrest.

## II

■ Next, Johns argues that the statements made by the sheriff's deputies to Johns during the interrogation were of such a nature as to constitute either coercion or inducement, thereby rendering the defendant's statements involuntary and, therefore, inadmissible. In such criminal situations the state bears the burden of proving the voluntariness of the defendant's confession by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). After reviewing the trial record, it is evident that the state carried this burden with substantial competent evidence.

Johns bases his argument on statements made by police officers during the course of the interrogation. The interrogation can be broken down into three different stages. During the first stage, Johns denied any knowledge of the homicide. In the second stage of the interrogation, Johns admitted that he had stabbed Price but denied that Julie Halverson was present. In the third and final stage, Johns admitted to shooting and stabbing Price and that Julie Halverson was present when the act was committed. Johns argues that the admissions which took place during the third stage of the interrogation were not admissible because they were coerced. Johns' allegation is based on statements made by the interrogating officer to him just before the third stage of the interrogation. These statements were as follows:

> "Do you ... obviously must love Julie or you got some deep feelings for her. We need to know what happened. I'm afraid of her getting into trouble. Let's clear her part in it if she was there...." (Tr. p. 72)

Later, the interrogating officer said,

> "We don't want to book her as an accessory...."

Johns argues that the police were aware of his feelings for Julie Halverson and used those feelings to coerce him to testify. Furthermore, Johns argues that he perceived the interrogating officer's statements as constituting an offer to release Julie Halverson if the defendant gave a full statement.

Under the fourteenth amendment due process clause, state courts must measure the voluntariness of a confession under a "totality of the circumstances" test. *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). Here, the trial court found that the behavior of the police during the interrogation was not inherently coercive and that Johns' free choice was not substantially impaired due to any actions or pressures exerted by the police. The district court found that physical force was not used on Johns, the length of the interrogation was not particularly long, and that the police did not obtain the confession by direct or implied promises. When the challenged statements took place, Johns had already admitted to killing Price with a knife, and the record indicates that the police interrogator's statements sought only to determine the relevant facts regarding any possible participation by Halverson in the murder.

Halverson's status as a potential witness to the killing also made her an obvious subject of interrogation. The trial court concluded that the police "activity" during this interrogation did not stimulate Johns to confess. While Johns' independent concern for Julie Halverson may have been a stimulus to his confession, "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, — U.S. —, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986).[3] Therefore, we affirm the district court's admission of Johns' confession.

## III

■ Johns challenges the wisdom of the legislature in adopting I.C. § 19–2020(9), which authorizes "death-qualifying" of juries in Idaho. "Death-qualifying" is the process by which inquiries are made of potential jurors on whether their feelings toward the death penalty would affect their ability to render a verdict. In Idaho, juries do not participate in the death sentencing process. At the trial, Johns made a motion

**3.** In *Colorado v. Connelly, supra,* the defendant approached an on-duty policeman and told him he wanted to talk about a murder he had committed the preceding year. The defendant was *Mirandized* and questioned by the officer regarding his state of mind. A detective arrived, re-*Mirandized* the defendant and asked him "what was on his mind." 107 S.Ct. at 518. The defendant then confessed to the murder and took the officers to the scene of the crime. The next day the defendant became disoriented and told his lawyer that voices had directed him to confess. After a medical evaluation, the defendant was found incompetent for trial, but after some time in a state hospital he was once again found to be competent. At his preliminary hearing defendant moved to suppress the statements based on his mental condition at the time he confessed. The Colorado courts found the statements must be suppressed under the fourteenth amendment due process clause, reasoning that the confession was not the product of a rational defendant's free will. The United States Supreme Court reversed, stating that the Colorado approach failed "to recognize the essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other." 107 S.Ct. at 521. The Court stated that:

"Moreover, suppressing respondent's statements would serve absolutely no purpose in enforcing constitutional guarantees. The purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution. [Citation omitted.] Only if we were to establish a brand new constitutional right—the right of a criminal defendant to confess to his crime only when totally rational and properly motivated—could respondent's present claim be sustained." *Id.*

The Court concluded that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment. We also conclude that the taking of respondent's statements, and their admission into evidence, constituted no violation of that Clause." *Id.* at 522.

Johns' arguments are analogous to the defendant's in *Colorado v. Connelly.* Johns asks us to require the police to make extensive inquiries into his state of mind regarding Julie Halverson. As the Supreme Court put it, these inquiries would of necessity be "quite divorced from any coercion brought to bear on the defendant by the State." *Id.* The police did not coerce, and coercion is a prerequisite to suppression.

to preclude "death-qualifying" of the jury, and this motion was denied by the court. Johns argued that by allowing "death-qualifying" of the jury, there is a profound risk that such a jury would be more inclined to render a guilty verdict. I.C. § 19–2020(9) authorizes inquiries into a juror's attitude and beliefs regarding capital punishment. The statute reads as follows:

"**19–2020. Grounds of challenge for implied bias.**—A challenge for implied bias may be taken for all or any of the following causes and for no other:

. . . .

"(9) If the offense charged be punishable with death, the entertaining of conscientious opinions as would preclude his finding the defendant guilty; in which case he must neither be permitted nor compelled to serve as a juror."

The statute recognizes that even though punishment is not a jury question, it is proper to exclude a juror if he objects to the death penalty. The constitutionality of the statute has been upheld by the United States Supreme Court in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), and *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and in Idaho in *State v. Creech*, 99 Idaho 779, 589 P.2d 114 (1979); *State v. Shepherd*, 94 Idaho 227, 486 P.2d 82 (1971); and *State v. Wilson*, 41 Idaho 616, 243 P. 359 (1925). Accordingly, we affirm the district court.

### IV

■ Johns argues that the evidence adduced at trial was insufficient to justify the verdict as to the murder and robbery charges. The root of this argument is that there was substantial evidence at trial to support either Johns' absolute self defense or imperfect self defense claims, and the

evidence at trial was not sufficient to support a finding of murder.

"Upon an appeal from a conviction the function of the appellate court is to examine the record to determine if competent and substantial evidence exists to support the verdict. Where there is substantial and competent evidence to support the verdict such will not be disturbed." *State v. Warden*, 97 Idaho 752, 754, 554 P.2d 684, 686 (1976) (citations omitted).

"A judgment of conviction will not be disturbed on appeal where there is substantial and competent evidence to support the judgment." *State v. Chapple*, 98· Idaho 475, 476, 567 P.2d 20, 21 (1977). *See also State v. Gerdau*, 96 Idaho 516, 531 P.2d 1161 (1975); *State v. Badger*, 96 Idaho 168, 525 P.2d 363 (1974); *State v. Shannon*, 95 Idaho 299, 507 P.2d 808 (1973); *State v. Bullis*, 93 Idaho 749, 472 P.2d 315 (1970). The record overwhelmingly substantiates the defendant's guilt as found by the jury. The evidence demonstrates that (1) Johns talked about killing the victim on the day of the shooting; (2) Johns indicated he would kill the victim with a gun; (3) Johns' girlfriend, Halverson, an eye witness to the shooting, testified that Johns shot the victim without any apparent reason; (4) Johns never told Halverson that he had acted in self defense; (5) during the interrogation, Johns never stated that he had justification for shooting the victim; and (6) the physical evidence points overwhelmingly to Johns' guilt. Accordingly, we affirm the district court.

### V

■ Next Johns argues that a defendant in a criminal jury trial is entitled to a specific "theory of the case" jury instruction and that the district court erred in denying his proposed instruction.[4] A de-

---

**4.** Johns' proposed jury instruction read as follows:

"PROPOSED JURY INSTRUCTION NO. 1

'It is Robert Johns' theory of the case that Robert Johns reasonably believed that Donald Price had drawn a knife with the intention of killing Robert Johns. Robert Johns reasonably believed that he had only an instant to save his life and/or the life of Julie Halverson. In fear

of his life and the life of Julie Halverson, Robert Johns defended himself and Julie Halverson by shooting Donald Price. In that the weapon at hand was a semi-automatic pistol, Robert Johns shot Donald Price twice in the head before Robert Johns realized what had occurred. Robert Johns then fired a third round at Donald Price to insure his safety and that of Julie Halverson.

fendant in a criminal action is entitled to have his legal theory of the case submitted to the jury under proper instructions. *State v. Olsen*, 103 Idaho 278, 647 P.2d 734 (1982); *State v. Gonzales*, 92 Idaho 152, 438 P.2d 897 (1968). However, refusal of defendant's requested instructions allegedly dealing with his defense theory is not error where that proposed statement is either erroneous in its statement of the law, is not supported by the evidence or constitutes an impermissible comment on the evidence, or is adequately covered by other instructions given by the court. *State v. Olsen, supra. See State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980); *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973); *State v. Richardson*, 95 Idaho 466, 511 P.2d 263 (1973). In order to determine whether the defendant's proposed instruction should have been given, this Court must examine the instructions that were given and the evidence that was adduced at trial.

▮ The record discloses that the instructions adequately informed the jury of the law applicable to the evidence introduced by both the prosecution and the de-

fense and that the instructions which were presented were evenhanded and fair.[5] Turning to Johns' "theory of the case" instruction, it is evident that it was an improper comment on the evidence and was properly excluded by the district court. Refusal by the district court to give the proposed defendant's instruction was proper because the instruction was misleading as to the factual evidence adduced at trial, and Johns' defense theory was adequately covered by the instructions already given by the court. *See State v. Pennell*, 108 Idaho 669, 701 P.2d 289 (1985); *State v. Atwood*, 105 Idaho 315, 669 P.2d 204 (1983); *State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980); *State v. Stevens*, 93 Idaho 48, 454 P.2d 945 (1969); *State v. Tope*, 86 Idaho 462, 387 P.2d 888 (1963). We affirm the district court's denial of Johns' proposed jury instruction.

## VI

▮ Next, Johns argues that the district court erred in enhancing both of his sentences under I.C. § 19-2520. That statute requires the enhancement of sentences

"Robert Johns dragged Donald Price's apparently dead body until the body arose which so startled and terrified Robert Johns that he stabbed Donald Price.

"If you find in fact that Robert Johns believed that he and/or Julie Halverson were in imminent danger of death or great bodily harm; and if you also find that Robert Johns reasonably believed that he and/or Julie Halverson were in imminent danger of death or great bodily harm; then you cannot find Robert Johns guilty of homicide, either murder or manslaughter.

"If you find that Robert Johns did in fact fear for his life and/or that of Julie Halverson when he defended himself and Julie Halverson; but that such belief was not reasonable in the circumstances, then you cannot convict Robert Johns of murder, but can convict Robert Johns of manslaughter.

"Unless you find beyond all reasonable doubt that Robert Johns did not in fact believe that he and/or Julie Halverson were in imminent danger of death or great bodily harm, and unless you also find beyond all reasonable doubt that Robert Johns could not have reasonably believed that he and/or Julie Halverson were in imminent danger of death or great bodily harm, you cannot convict Robert Johns of homicide, either murder or manslaughter.

"Unless you find beyond all reasonable doubt that Robert Johns did not in fact believe that he

and/or Julie Halverson were in imminent danger or death of great bodily harm, you cannot convict Robert Johns of murder, but can convict him of manslaughter. *State v. McGlochlin*, 85 Idaho 459 [381 P.2d 435], *State v. Gonzales*, 92 Idaho 152 [438 P.2d 897], *State v. Richardson*, 95 Idaho 446 [511 P.2d 263], cert. denied 414 U.S. 1163 [94 S.Ct. 928, 39 L.Ed.2d 117], *U.S. v. Escrobar DeBright*, 742 F.2d 1196 (9th Cir. 1984)."

5. Review of the jury instructions indicates that Instruction 15 presented the "information" with the crimes charged against Johns; Instructions 16 through 25 dealt with murder, second degree murder, manslaughter, voluntary manslaughter, the distinction between murder and manslaughter; the definition of lesser included offenses; what is required to find first degree murder in this case, or to find second degree murder, voluntary manslaughter or involuntary manslaughter; Instructions 33 through 38 dealt with defendant's self defense claim and justifiable homicide; Instructions 31 and 32 dealt with giving the defendant the benefit of the doubt when the jury was unsure of whether a murder or manslaughter had taken place or whether manslaughter or justifiable homicide had taken place.

of those convicted of using a firearm during the commission of certain crimes. The version of I.C. § 19–2520 which was in effect when Johns was sentenced reads:

> "19–2520. **Sentence for use of firearm.** —Any person convicted of violation of sections ... 18–4003 (degrees of murder), ... or 18–6501 (robbery defined), Idaho Code, who displayed, used, threatened, or attempted to use a firearm while committing the crime, shall, in addition to the sentence imposed for the commission of the crime, be imprisoned in the state prison for not less than three (3) nor more than fifteen (15) years. Such additional sentence shall run consecutively to any other sentence imposed for the above cited crimes."

I.C. § 19–2520 was limited in its effect by the enactment in 1983 of I.C. § 19–2520E, which reads:

> "19–2520E. **Multiple enhanced penalties prohibited.**—Notwithstanding the enhanced penalty provisions in sections 19–2520, 19–2520A, 19–2520B and 19–2520C, Idaho Code, *any person convicted of two (2) or more substantive crimes* provided for in the above code sections, *which crimes arose out of the same indivisible course of conduct,* may only be subject to one (1) enhanced penalty." (Emphasis added.)

Johns was convicted of "two (2) or more substantive crimes," murder and robbery, for which enhancement under I.C. § 19–2520 was required unless those "[two] crimes arose out of the same *indivisible* course of conduct." In his brief, appellant Johns, without any factual analysis, merely asserts that "the robbery and murder alleged took place the same date, same time and same place," and therefore the two enhanced sentences "clearly violate the strictures of I.C. § 19–2520E." [6]

This is the first occasion which this Court has had to interpret I.C. § 19–2520E. That statute, by its wording, limits the otherwise mandatory duty of the district court to enhance "multiple" sentences under I.C.

§ 19–2520. The question which we must decide is whether or not the two crimes for which the defendant Johns was convicted, murder and robbery, "arose out of the same *indivisible* course of conduct." That is a factual question which requires us to review the record.

The trial court, based upon the evidence in the record, concluded that the conduct concerning the murder was divisible from the conduct constituting the robbery, and thus enhanced both sentences as required by I.C. § 19–2520. The evidence in the record supports that factual determination. The statements and testimony at trial of both Julie Halverson and the defendant Johns clearly establish that the murder of Price was because of an ongoing longstanding hatred of Price by Johns, aggravated most recently by Price's advances toward Julie Halverson, whom Johns considered to be his girl. In his statement to police shortly after the killing Johns stated that "he wasn't killed for his ... money." It was only after Price had been mortally shot and stabbed, and after Johns had dragged him off to a hiding place in the sagebrush, that Johns, as an afterthought, determined to take Price's wallet and his Harley motorcycle. Upon returning to Kuna, Johns additionally entered Price's apartment and took more of his personal belongings. The trial court was amply justified in sentencing Johns upon the premise that the acts of murder and robbery were divisible, rather than indivisible. Accordingly, the trial court did not violate the provisions of I.C. § 19–2520E in imposing a separate enhancement on each sentence.

## VII

Finally, Johns argues that the trial court erred in imposing what he terms an excessive sentence. As has been pointed out in numerous Idaho cases, the sentence to be imposed in a case is within the discretion of the district court and, where it is within the statutory limits set out by the legislature, will not be disturbed on appeal unless there

---

**6.** I.C. §§ 19–2520 and 19–2520E are sentence enhancement statutes. No issue has been raised on appeal regarding any constitutional claim of double jeopardy or any statutory claim of double jeopardy under I.C. § 18–301. *See Sivak v. State,* 112 Idaho 197, 731 P.2d 192 (1986).

is a clear showing of abuse of discretion. *State v. Seifert*, 100 Idaho 321, 597 P.2d 44 (1979); *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978); *State v. Chapa*, 98 Idaho 54, 558 P.2d 83 (1976). A sentence will only constitute an abuse of discretion if it is found to be unreasonable based upon the facts of the particular case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). The sentences imposed on Johns were within the statutory limits, and so we must decide whether there was an abuse of discretion by the district court.

The district court pronounced sentence only after (1) holding a hearing to consider the evidence on the aggravating and mitigating circumstances as set forth in I.C. § 19–2515, (2) examining a detailed presentence report, and (3) examining a psychiatric examination of Johns. The district court found that none of the aggravating circumstances set forth in I.C. § 19–2515 existed; however, the court stated it found little in the way of mitigating circumstances to help the defendant. The defendant was (1) an adult in control of his faculties, (2) had a long criminal record, and (3) there was no justification for the killing which was "carried out in a cold premeditated, dispassionate manner, evidencing a disregard for human life." The court's conclusion that the needs of society require that Johns be incarcerated for a lengthy period of time without the possibility of parole was not an abuse of discretion but, instead, was supported by the record as was adequately highlighted in the sentencing memorandum.

Affirmed.

SHEPARD, C.J., and DONALDSON, J., concur.

HUNTLEY, Justice, dissenting.

I dissent to Part VI of the majority opinion, wherein the majority affirms the trial court's imposition of two separate sentence enhancements for use of a firearm during the commission of both the murder and the robbery, pursuant to I.C. § 19–2520.

I.C. § 19–2520E[1] prohibits multiple enhanced penalties for crimes which "arose out of the same indivisible course of conduct," providing that, in such instances, only one sentence enhancement may be given.

I believe it is manifest overreaching for this Court to permit two separate enhancements in the instant case. The factual scenario is not complex. Johns shot and stabbed Price, dragged his body to the sagebrush and then robbed him. This was not a protracted series of events, but a steady, indivisible course of conduct.

The majority concludes that Johns' conduct leading to his murder conviction and conduct leading to his conviction for robbery are somehow divisible. The majority, as support for this assertion, notes that the trial court concluded that Johns' conduct contained separate elements constituting two distinct crimes, murder and robbery and, therefore, the acts were "divisible" and the two enhancements were appropriate. It should be obvious that the majority's argument is a masterful example of circular reasoning in which § 19–2520E is reduced to a mere absurdity. To assume that the existence of the requisite elements for two crimes mandates the conclusion that the two crimes were *not* committed during the same course of conduct would preclude *ever* finding that two separate crimes arose out of the same indivisible series of events. If such is true, one wonders why the legislature wasted its time drafting such an ineffectual piece of legislation. I submit the legislature meant what it said when it drafted I.C. § 19–2520E. That is, for crimes which "arose out of the same indivisible course of conduct" only one sentence enhancement may be given.

1. I.C. § 19–2520E reads:

   **19–2520 E. Multiple enhanced penalties prohibited.**—Notwithstanding the enhanced penalty provisions in sections 19–2520, 19–2520A, 19–2520B and 19–2520C, Idaho Code, *any person convicted of two (2) or more substantive crimes* provided for in the above code sections, *which crimes arose out of the same indivisible course of conduct,* may only be subject to one (1) enhanced penalty. (Emphasis added).

The majority also relies on the fact that Johns returned to Kuna, to Price's apartment, after murdering Price and took more of Price's personal belongings. This fact, the majority argues, establishes that the murder and robbery were divisible acts, thereby validating the trial court's imposition of two separate enhancements for the crimes of murder and robbery. However, any subsequent action by Johns in Kuna could not possibly have constituted "robbery with a firearm" necessary to invoke the enhancement provisions of I.C. § 19–2520, as Johns was not committing *robbery* at the time he ransacked and stole from Price's apartment. Robbery is a forcible taking of property *from the person:* "[R]obbery requires something more than simply a trespass or a taking: the taking must be from the person or presence of the victim as well as from his possession." Criminal Law, LaFave & Scott, § 94 p. 695 (1972).

Contrary to the majority's assertions, the evidence shows that the acts of murder and robbery occurred during the same general course of conduct. I would hold that the trial court violated the provisions of I.C. § 19–2520E in imposing a separate enhancement on each sentence, as they arose out of the same indivisible course of conduct. Only one enhancement should have been given.

BISTLINE, Justice, dissenting.

While agreeing with the dissent of Justice Huntley in the matter of two separate sentence enhancements, it is observed that both the majority and Justice Huntley overlook a very basic problem with the crimes themselves. Whether there is or is not a steady, indivisible course of conduct, the scenario does not bear out both a murder and a robbery.

The trial court correctly concluded that Johns' conduct constituted two distinct crimes but the conclusion that one of these crimes is robbery is in error. The majority states: "It was only after Price had been mortally shot and stabbed, and after Johns had dragged him off to a hiding place in the sagebrush, that Johns, as an *after-thought*, determined to take Price's wallet and his Harley motorcycle." (Emphasis added.) Such conduct amounts to larceny, but not robbery. Robbery is a crime defined by the Idaho Code as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished *by means of force or fear.*" I.C. § 18–6501 (1979). *See also State v. Olin*, 112 Idaho 673, 735 P.2d 984 (1987). The intent to take the wallet and the motorcycle was formed after the act of force, *i.e.*, inflicting the fatal wounds.

The intent, *animo furandi*, necessary for the crime of robbery accompanies the force or fear being used to obtain the property which is in the possession of another. Since Price, according to the majority opinion, was mortally wounded or already dead, no force or fear was involved in the taking of his property. It is, of course, essential to a conviction of robbery "that the taking ... should, at the time of manucaption, have been with a larcenous intent." *McCall v. State*, 56 Ala.App. 457, 322 So.2d 748 (1975), citing *Kennedy v. State*, 208 Ala. 66, 93 So. 822 (1922). The intent to take his property was instead an *after-thought* according to the majority. While it is undoubtedly true that a person can steal from a corpse, and a person can steal from an unconscious person—a rather common affair with unworthy prostitutes and dead drunks—robbery involves an additional quantum beyond a felonious taking. The force Johns used here was expended in killing Price, not the taking of his wallet or his Harley.

The issue arose in a similar context in *People v. Green*, 27 Cal.3d 1, 164 Cal.Rptr. 1, 609 P.2d 468 (1980). There the defendant Green killed his wife and took her clothes, rings, and purse in a failing effort to render her body unidentifiable. Convicted of robbery as well as kidnapping and felony first degree murder, on appeal, Green argued that his conviction for robbery was improper since his intent to steal arose only after the force was used against the victim. That court's analysis should be this Court's as well, especially within a

short few weeks after our decision in *State v. Olin*, 112 Idaho 673, 735 P.2d 984 (1987):

> The rule urged by defendant, on the other hand, is consistent with the fundamental doctrine of criminal law codified in Penal Code section 20, to wit, that in every crime "there must exist a union, or joint operation of act and intent...." (See *People v. Mayberry* (1975) 15 Cal.3d 143, 154, 125 Cal.Rptr. 745, 752, 542 P.2d 1337, 1344; *People v. Hernandez* (1964) 61 Cal.2d 529, 532, 39 Cal.Rptr. 361, 393 P.2d 673; *People v. Stuart* (1956) 47 Cal.2d 167, 171, 302 P.2d 5.) "So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication." (Fn. omitted.) (*People v. Vogel* (1956) 46 Cal.2d 798, 801, 299 P.2d 850, 853.) It is an element of robbery. (*People v. Crowl* (1938) 28 Cal.App.2d 299, 308, 82 P.2d 507.)
>
> Under section 20,[1] the defendant's wrongful intent and his physical act must concur in the sense that the act must be motivated by the intent....
>
> ... [T]o support a conviction of larceny the defendant must have intended to steal the property at the time he took it; if the intent arose after the act of taking, the crime may be embezzlement or a lesser offense but it cannot be larceny.... The same rule must therefore apply to robbery: "Since robbery is but larceny aggravated by the use of force or fear to accomplish the taking of property from the person or presence of the possessor [citation], the felonious intent requisite to robbery is the same intent common to those offenses that, like larceny, are grouped in the Penal Code designation of 'theft.'" (Fn. omitted.) (*People v. Butler* (1967) 65 Cal.2d 569, 572 573, 55 Cal.Rptr. 511, 514, 421 P.2d 703, 706.) We conclude that like the nonviolent taking in larceny, the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal in order to satisfy the requirement of section 20: if the larcenous purpose does not arise until after the force has been used against the victim, there is no "joint operation of act and intent" necessary to constitute robbery.[2] *Green, supra*, 609 P.2d at 500–01.

*See also Ortega v. Superior Court of San Joaquin County* (3d Dist.), 135 Cal.App.3d 244, 185 Cal.Rptr. 297 (1982); *People v. Joyner*, 26 N.Y.2d 106, 308 N.E.2d 26, 257 N.E.2d 26 (1970) (Defendant was not guilty of felony murder, if at the time of the murder defendant did not have the intent to commit the robbery.); *McCall v. State of Florida*, 503 So.2d 1306 (5th Dist., 1987). Johns clearly was not shown to have had larceny in mind when he shot Price; hence, the taking of his wallet followed by the appropriation of the motorcycle was larceny, but a larcenous taking absent any intimidation or violence. 67 Am.Jur.2d, *Robbery* § 17, p. 70.

The importance of determining that Johns did not commit a robbery is obvious. Although Johns' crime in stealing the wallet and the Harley was a larceny under I.C. § 18–4601, it is not one of the substantive crimes for which an enhanced penalty is provided for under I.C. § 19–2520. The trial court was in error when it convicted Johns of a robbery and imposed a separate enhancement for the crime. The majority is grossly in error in declaring that the evidence supports that conviction and concomitant sentence enhancement.

---

1. Section 20 of the California Penal Code is identical to § 18–114 of the Idaho Code except for the title and opening sentence which reads: "Crime; unity of act and intent, or criminal negligence. To Constitute Crime there Must Be Unity of Act and Intent." West's Ann.Pen.Code, § 20 (1970).

2. Because the court held the jury could have reasonably concluded that the defendant Green had used force or intimidation in causing his wife to disrobe before he killed her, and because one spouse can steal from another, the robbery conviction was upheld.